June, 1810.

TREAD-
WELL
v.
BULKLEY.

---

HENRY TREADWELL AND ROBERT MARVIN *against*
GERSHOM BULKLEY, AMOS SAGE, ZEBULON STOW,
OLIVER SMITH, LUCY JOHNSON AND ANNA STOCKING.

MOTION for a new trial.

This was an action of partition, alleging that the plaintiffs and defendants held together, as tenants in common, a certain piece of land in *Middletown*, containing about six acres, in such manner and proportion that the plaintiffs were entitled to have five elevenths of one sixth

Where a deed is executed to more persons than one, without designating in what proportions they are to hold, they take in equal proportions.

Nor can the considerations paid by the several grantees be inquired into by parol, in order to show that they are entitled to different proportions.

If, in such case, one of the grantees dissents to the conveyance, the whole property does not vest in the others, but his share remains in the grantor.

Where a deed is executed without the knowledge of the grantee, though the law presumes his assent, yet that presumption may be removed by proof of dissent.

Whether certain circumstances adduced in evidence establish the fact of dissent, is a question which it is the peculiar province of the jury to determine.

part of the same in severalty, and the defendants the residue.

The defendants pleaded that they did not hold together with the plaintiffs, in manner and proportion as alleged in the declaration.

At the trial on this issue, it appeared that *Gershom Bulkley*, one of the defendants, was once the sole proprietor of the land in question. On the 19th of *February*, 1808, he conveyed the same, for the consideration of 2,500 dollars received of the grantees, to the defendants and *John Hinsdale*. On the next day, the plaintiffs attached said land on a suit against *Bulkley* for a debt due to them from him, and afterwards obtained judgment, and took out execution, and levied the same on five elevenths of one sixth part in full satisfaction thereof, and had the same returned and recorded as the law directs. It was admitted that the deed was valid as to all the grantees except *Hinsdale*, and that it conveyed to them five sixths of the premises; but the plaintiffs claimed that *Hinsdale* never assented, but dissented, to the grant to him, and that, therefore, one sixth remained in *Bulkley*, the grantor, and was liable to the attachment of his creditors. To establish this point, they introduced the testimony of *Hinsdale*, which was as follows: That the deed was made without his knowledge. The first information he had of it was from *Amos Sage*, Esq. when he was on his way to *Rocky-Hill* to secure his debt against *Bulkley*. He did not judge it expedient to return on that account, but proceeded to *Rocky-Hill*, and secured his debt, by attaching personal property, which was afterwards sold and applied in satisfaction of the execution. He did not refuse to take benefit of the deed. His intention, at the time, was, to avail himself of it if he did not find other property, which, he supposed, would be better. To the admission of this evidence the defendants objected, but the court admitted it.

In the course of the trial, the defendants moved that

the name of *Bulkley* might be stricken out, that he might be used as a witness in the cause, on the ground that the testimony of *Hinsdale* showed his assent to the grant; and that if he had not assented, but had dissented, the whole of the property passed by the deed to the other grantees, leaving no residuum in the grantor. But the court, on the objection of the plaintiffs, refused to permit the name of *Bulkley* to be stricken out; and instructed the jury that the question of assent was a matter of *fact* merely, which it was their province to determine; and, if *Hinsdale* did not assent, but dissented, the deed left a residuum in the grantor, on which the plaintiffs might levy.

The defendants also offered to prove, that the deed was given in satisfaction of debts separately due to the grantees, and to show their amount, in order to ascertain the proportions in which the grantees held, and that *Hinsdale's* proportion was not one sixth; but the court rejected this evidence, and instructed the jury that the proportion intended to be conveyed to *Hinsdale* by the deed was one sixth.

The jury found a verdict for the plaintiffs; and the defendants moved for a new trial.

*Hosmer*, in support of the motion.

1. The question whether *Hinsdale* assented or dissented to the grant was immaterial; for in case of dissent, no part of the property remained in *Bulkley* the grantor, but the whole vested in the assenting grantees. If a warrant of attorney be made to make livery of seisin to two, and one of them die, livery of seisin to the other is good for *all* the land. So it is if one of the feoffees be a professed friar or monk before the livery. *Perk.* s. 192. 204. The reason is, that by the livery the grantor parts with *all*, and it vests in such as are willing and capable to take. Delivery of a deed here is followed with the same consequences as livery of seisin in *En-*

June, 1810.

TREAD-
WELL
v.
BULKLEY.

June, 1810.

TREAD-
WELL
v.
BULKLEY.

*gland.* Of course, the testimony of *Hinsdale* ought to have been adjudged irrelevant and inadmissible; and the jury should have been charged to find a verdict for the defendants. For the same reason *Bulkley's* name should have been stricken out.

2. To a deed or grant, which is apparently valuable, every person is presumed by law to assent until he expressly dissents. The reasons in support of this rule of law are, first, because it is for the benefit of the grantee; secondly, because it is absurd that the freehold should remain in the grantor after the grant; (*Co. Litt.* 217.) thirdly, to prevent uncertainty of freehold; fourthly, because it is necessary, as applicable to *femes covert* and infants, otherwise they could not be grantees. No inconvenience can result from the rule, as any person may dissent. A surrender vests in the surrenderee before notice. *Thompson* v. *Leach*, 2 *Vent*. 198. 206. S. C. 1 *Show*. 296. Where there is feoffment to several, and livery to one, all take until dissent. *Mutton's Case*, 2 *Leon*. 223. Feoffment to a *feme covert* is good before notice to the husband. *Co. Litt*. 3. 356. b. *Perk*. s. 43. 1 *Swift's Syst*. 299. Gift of goods vests the property in the donee, before notice, subject to be devested by dissent. 3 *Co*. 26. b. 27. *Atkin* v. *Barwick*, 1 *Stra*. 165.

It is also an established principle that the right of dissenting must be exercised at the time of notice, and not afterwards. 2 *Vent*. 206. *Co. Litt*. 2. b. 3.

The court, then, erred in charging the jury that the question of *Hinsdale's* assent or dissent was a matter of mere fact; and that if he did not assent, there remained one sixth of the land attempted to be conveyed in the grantor.

3. It was, at any rate, competent for the defendants to show the *consideration* of the deed, in order to ascertain the share remaining in the grantor. Of this the deed itself was only *prima facie* evidence.

*Daggett* and *Whittelsey*, contra. If the dissent of
*Hinsdale* to the grant rendered it inoperative as to his
share, the evidence was properly admitted. According
to the common law of *England*, the deed, upon the face
of it, imported a grant of equal portions to grantees as
joint tenants, who hold by moieties, or several estates,
for all purposes, except for rendering services, and for
giving title to co-tenants by survivorship after death.
*Perk.* s. 220. *Co. Litt.* 186. a. *Fisher* v. *Wigg*, 1 *Ld.
Raym.* 627. If joint tenants hold several estates in all
cases, except the two mentioned, then if one of the
grantees dissents, his portion does not vest in the other
grantees, but remains in the grantor. If an infant, *feme
covert,* or *non compos*, purchase an estate, and after disa-
bility removed dissent, the estate reverts to the grantor.
*Co. Litt.* 2. b. 2 *Bla. Com.* 292.

Further, the conveyance in this case is without consi-
deration from one of the grantees ; and an estate granted
without consideration enures to the benefit of the grant-
or. *Perk.* s. 533. 2 *Bla. Com.* 296, 297.

It is contended, that where one of several grantees
dissents, his share goes to the other grantees, because
the deed purports to pass the whole. So it would, if
there had been but one grantee ; but would the estate,
therefore, pass out of the grantor, if the grantee dis-
sented, or was incapable of taking ? Suppose nine
tenths of the estate had been given to the dissenting
grantee ; would the others take those nine parts ? This
is too absurd to be admitted ; but the inequality can make
no difference in the principle.

A grantee is not bound to declare his assent or dissent
*instanter*, but has a *reasonable time* for that purpose after
notice. If a grant be made to a *feme covert, non compos*,
or infant, and after disability removed the grantee does
no act showing an assent, his heirs, after his death, may
dissent and avoid the grant. *Co. Litt.* 2. 2 *Bla. Com.*
291, 292.

TREAD-
WELL
v.
BULKLEY.

The law presumes the assent of the grantee only until he dissents; when an express dissent is given, that presumption is removed. The testimony of *Hinsdale* went to establish the fact of dissent.

The charge in the part excepted to, relates to *the weight of evidence.* The plaintiffs insisted then, as they now do, that the testimony adduced proved that *Hinsdale* dissented. The defendants contended that it proved his assent. The court said, this question arising out of the evidence is a question of mere fact for the jury to determine. It is always the province of the jury to determine whether a fact stated is established by the evidence adduced.

As to the evidence offered by the defendants to prove that the deed was given in satisfaction of debts separately due to the grantees, in order to ascertain the proportion in which the grantees held, it may be sufficient to observe, that a deed can never be explained at law by parol, unless there is some ambiguity; and there was none here.

REEVE, J. (After stating the case.) It does not appear from the motion on what ground the objection to *Hinsdale's* testimony was made. It is apparent that it was not because he was an incompetent witness; for his testimony had previously been read without objection. It must have been that the testimony itself was irrelevant. The question before the court was, whether the witness assented to the conveyance aforesaid; and when he had before testified that he meant to avail himself of the deed, provided that he could not find other property which suited him better, it seemed to imply, that if he did find such other property, he had no intention to avail himself of the deed. It must, therefore, be proper evidence to be left to the jury, for them to infer whether there was or was not an assent by the witness to the conveyance.

The defendants on the trial moved the court to strike out the name of *Gershom Bulkley* from the declaration, that he might be used as a witness; on the ground that it appeared by the testimony of *Hinsdale* that he had assented to the deed aforesaid; and also on the ground that if he dissented, the whole property was by the said deed vested in said *Amos, Zebulon, Oliver, Lucy,* and *Anna ;* but the court refused to strike out the name of said *Gershom.* It certainly was not the province of the court to determine the fact from the testimony given in by the witness, that he had or had not assented to a deed. It was in this case a mere matter of fact, which the jury only were competent to decide. However true it may be, that when a deed is made to an infant, or lunatic, incapable of an actual assent,' or to any person who does not know that a deed has been executed to him, the law presumes an assent; yet this in the last case is the presumption of a fact liable to be removed out of the way like all other presumptions ; and when there has been proof introduced for the purpose of showing that there was no assent, which in itself implies a dissent, the jury only are the competent forum to decide this question.

The other ground for striking out the name of *Gershom Bulkley* from the declaration, if it had been well founded, would have decided the case in favour of the defendants; for if *Bulkley* had no estate in said land, the plaintiff could not have acquired any. But it is an idea wholly inadmissible, that when a deed is executed to two or more, and one dissents to the conveyance, the others are vested with the whole property. When a deed is executed to more persons than one, without designating in what proportions they shall hold, they must take in equal proportions. If to two persons, they each take one half; if to three, they each take one third; and the dissent of one cannot increase the proportions of the others. No more than one third was intended to be conveyed ; and by such a construction of the deed, the intention of

June, 1810.

TREAD-
WELL
v.
BULKLEY.

the grantor would be defeated. Such a construction would often work great injustice, or produce much perplexity. *A.* is indebted to *B.*, *C.* and *D.*, to each a hundred dollars, and conveys to them a lot of land of that value to satisfy their debts. *D.* refuses to accept the deed. Shall *B.* and *C.* have an exclusive title to the whole lot, by which means they would each have fifty dollars more than their debt? The legal operation of such deed is, to give to each one third, and no more; as much so as if it had been detailed at length in the deed. And at the time of executing the deed but one third vested in each grantee; and the moment that *D.* dissented to the conveyance, it devested him of all title, but could not operate to convey his share to the other grantees, but left it where it was before it was granted to him, viz. in the grantor. If, therefore, there was a dissent to the deed by *Hinsdale*, there was a residuum of one sixth in *Bulkley*, on which the plaintiffs might levy their execution; and as only five elevenths of this sixth part were taken to satisfy this execution, there were still six elevenths of one sixth part remaining in *Bulkley ;* so that he was properly made a defendant, and could not be struck out of the declaration.

The defendants offered evidence to show that the aforesaid deed was given in satisfaction of debts separately due to the grantees named therein, in order to show the amount of said debts respectively, to ascertain the proportions in which said grantees held, and to show that *Hinsdale's* proportion was not one sixth; but this testimony, so offered, was rejected by the court. The rule of law undoubtedly is, as has been already observed, that when a conveyance is made to more than one person, they take in equal proportions, unless different proportions are designated upon the face of the deed. The legal operation of this deed was, then, to convey one sixth of the land to *Hinsdale*, and no parol proof could be admitted to give it a different operation than what

the words contained in the deed imported. Whatever equity there might be among the grantees as to their holding different proportions, according to their respective debts, this is a matter for them to settle among themselves; and if they cannot agree, the only remedy of those who claimed to be injured, is to apply to chancery that justice may be done. But a court of law has no such power, and they cannot control the legal operation of the deed.

Since, then, in point of law, one sixth part was intended to be conveyed to *Hinsdale*, and also, if *Hinsdale* did not assent to the deed, this sixth part still belonged to *Gershom Bulkley;* and the question of assent being a matter of fact; the charge to the jury that it belonged to them to determine whether *Hinsdale* assented to the said deed, and if he did not assent to the same, there remained in said *Gershom Bulkley* one sixth part of the premises, whereon the plaintiffs had right to levy for their debt, was correct.

For these reasons, I do not advise to a new trial.

In this opinion the other judges severally concurred.

New trial not to be granted.