*Middlesex,*
July, 1828.

JUDD and others *against* BUSHNELL and others.

Where the plaintiff in a bill in chancery, sought to obtain money, founding his claim on a devise of real estate to be estimated at the appraised value; and the bill averred, that the money sought, and the appraised value of the estate devised, were, respectively, more than 335 dollars; it was held, on demurrer, that these averments were sufficient to give the superior court jurisdiction of the suit.

*A.*, by his will, directed, that one-fourth part of his real estate, appraised according to law, should be retained in the hands of his executors, and that they should pay over annually the interest of that amount to his daughter *H.*, during the minority of her children, and the principal to the children, as soon as they should come to full age. The testator appointed his three sons-in-law, *B.*, *C.* and *D.*, his executors. *C.* died before the testator, and *D.* never accepted the trust. *B.* accepted the trust, and had an inventory of the estate taken, and a distribution made, one-fourth part being set to him as executor. At different times afterwards, he conveyed, in his individual capacity and for his private benefit, the estate so set to him, in distinct parcels, to *E.*, *F.* and *G.*, who had notice of all the facts. *B.* also became insolvent, and failed to pay the interest to *H.*, or the principal to her children as they came to full age. On a bill in chancery, brought by *H.* and her children, against *B.* and his several grantees, seeking satisfaction of their claims from the defendants, or the estate in their hands, it was held, 1. that as the executors were to pay a gross sum in money, to be ascertained by an appraisal of the land, an estate *in fee* was given to them; but 2. that this estate in fee was not absolute, but *upon condition* that they should perform the directions of the testator in relation to the plaintiffs; and 3. that it is within the power of a court of chancery to compel such performance against the defendants; 4. that the plaintiffs had not adequate remedy at law; 5. that there was no misjoinder of parties, plaintiffs or defendants.

THIS was a bill in chancery, brought to the superior court, stating the following case.

On the 4th of *December*, 1807, *Ezekiel Jones* made his will, by which, after giving to his wife *Hannah* the improvement of one-third of his dwelling-house, during her life, together with the whole of his personal estate, and to each of his three daughters, *Caroline*, *Lydia* and *Ethelinda*, the sum of 117 dollars, out of his estate, to make them equal with his daughter *Hannah*, disposed of the remainder of his estate as follows: " My other estate, being appraised according to law, one-fourth of the same, as per inventory, shall be retained and holden in the hands of my executors, who are hereby ordered and directed to pay over annually to my said daughter *Hannah* the interest of said fourth, during the minority of her children; at the expiration of which, said executors shall pay over said fourth, at inventory price in money, into the hands of said children, as

*Middlesex.*
July, 1828.

Judd
*v.*
Bushnell.

soon as they shall come to full age, in equal proportion, who shall thereupon obligate themselves to pay annually the interest of such part as may fall to them, to their mother, during the term of her life. Further, my will is, that all my real estate, consisting of lands, buildings, &c., not in this my will above disposed of, shall be equally divided to and among my three daughters, *Caroline*, *Lydia* and *Ethelinda*, to be to them, their heirs and assigns forever." The testator then appointed his three sons-in-law, *William Chapman*, *Augustus Bushnell* and *Benjamin Chapman*, to be his executors.

In *January* 1811, the testator died, leaving a large real estate in *Saybrook*. His wife had died previously; but his four daughters, *Caroline*, *Lydia*, *Ethelinda* and *Hannah* survived him. *Hannah*, at the time of making the will, had three children, *viz. Hannah*, *Jehiel* and *Enoch Judd ;* and has never had any other children.

*William Chapman*, named as one of the executors, died before the testator ; and *Benjamin Chapman*, named as another, never accepted the trust or acted in that capacity. *Augustus Bushnell*, the only acting executor, after probate of the will, caused an inventory to be made of the testator's real estate, which amounted, by the appraisal, to 3903 dollars,85 cents. Soon afterwards, he disposed of a part of the real estate to pay debts and expenses, and procured a distribution to be made of the residue. In this distribution, certain parts of the real estate, valued at 852 dollars, 50 cents, were set to each of the testator's daughters, except *Hannah*, to whom nothing was distributed ; and what then remained of such estate, valued at 852 dollars, 50 cents, was set to *Augustus Bushnell* as executor. In *January*, 1814, this executor sold and conveyed two of the pieces of land set to him, one to *Ira Bushnell*, and the other to *Daniel Griswold*. In *August*, 1819, he, with his wife *Ethelinda*, mortgaged another parcel of such land to *Elisha Hart*, to secure the payment of a note for 4500 dollars. In *September*, 1819, he mortgaged another parcel to *Ira Bushnell* and *Ira Bushnell*, jun. to secure the payment of certain notes due to them, amounting to about 400 dollars. All these conveyances were made, by *Augustus Bushnell*, in his private and individual capacity, and for his own benefit exclusively, and not as executor or trustee : which was well known to the several grantees, when they took their respective conveyances. They also knew, that the lands so conveyed to them, were not the

*Middlesex,* lands of *Augustus Bushnell,* and that he had no interest in
July, 1828. them, and had no right or authority whatever to convey them ;
and that he never had any intention of paying over the avails of
the lands to those to whom the lands belonged.

Judd
*v.*
Bushnell.

*Hannah Judd,* jun. became twenty-one years of age, on the
1st of *January* 1818 ; and *Augustus Bushnell,* soon after-
wards, paid her her share of her grandfather's estate. *Jehiel
Judd* became of full age, in *January,* 1821, and *Enoch,* in
*September,* 1824, and were then entitled to receive their re-
spective shares ; previous to which, *viz.* in *August,* 1819, *Bush-
nell* became wholly insolvent, and has never paid, or been able
to pay them, or either of them, any part of the property devised
to them. The interest due to the testator's daughter, *Hannah,*
on the property devised to her, was also unpaid.

The bill was brought by *Hannah Judd* and her two sons,
*Jehiel* and *Enoch,* praying that the conveyances above stated
may be set aside, and the grantees compelled to account for
the rents and profits ; and that the executor may be removed,
and some suitable person appointed in his place, with power
to sell the real estate in question, and from the avails thereof,
to satisfy the just claims of the plaintiffs.

The bill averred, that the shares of the plaintiffs, including
principal and interest, amounted to 700 dollars ; and that they
were without adequate remedy at law.

*Augustus Bushnell, Elisha Hart, Daniel Griswold, Ira
Bushnell* and *Ira Bushnell,* jun. were made parties defendants.

To this bill there was a demurrer ; and the case was there-
upon reserved for the advice of this Court.

*N. Smith* and *Sherman,* in support of the demurrer, contend-
ed, 1. That the plaintiffs could not join in this bill, for want of
a joint interest in the subject matter. On the contrary, the in-
terests of *Hannah Judd,* the mother, and of her sons, are per-
fectly distinct. She is the only person interested in the in-
come of the property in question, until the children come of
age ; and such income belongs to her absolutely. When the
children come of age, they are entitled to the property ; and of
course, they do not need a trustee ; but their rights are several.
They then become severally obliged to pay the interest to the
mother, during her life. They have, or may have, conflicting
interests ; but they have not, and cannot have, any joint in-
terest.

2. That the defendants are not jointly responsible. They are not joint grantees ; and have no joint interest. The conveyances made by *A. Bushnell,* were to different individuals, of separate and distinct portions of the estate. The plaintiffs claim, that each of these conveyances, taken by *itself,* is void ; and the bill seeks to recover the rents and profits from each separately.

3. That there is no allegation in the bill, that will give the superior court jurisdiction of the suit. The land is not averred to be of greater value than 335 dollars.

4. That if the bill has merits, the plaintiffs have adequate remedy at law. *A. Bushnell* is liable, *as executor,* to pay the money sought by the bill ; and it makes no difference that he is insolvent ; for the court can judicially perceive, that he has sufficient surety.

5. That a devise, where the devisee is onerated with a payment or charge, is construed an estate in fee ; and that *A. Bushnell,* therefore, took a fee in the lands distributed to him, though they were not given to him and *his heirs. Reed* v. *Halton,* 2 *Mod.* 25. *Collier's* case, 6 *Rep* 16. S. C *Walker* v. *Collier, Cro. Eliz.* 379. *Smith* v. *Tyndal,* 2 *Salk.* 685. *Com. Dig. tit* Estates by Devise. N. 4. *Hawker* v. *Buckland,* 2 *Vern* 106. In the case before the court, the word *paying,* &c. does not occur, nor any word of *condition.* Therefore, the obligation of the executor to pay *Hannah Judd* and her children, was personal, and his title in the land *not conditional,* but *absolute.* The questions arising in very many cases, whether creditors and legatees can follow the assets into the hands of a purchaser, cannot arise here. The land is *not assets,* but the *absolute estate* of the executor. But if the question could arise, these plaintiffs cannot make it ; as an executor may always sell, and the assets cannot be followed, " in any case whatsoever," by *general* legatees. The right of calling on the purchaser is confined, exclusively, to *creditors* and *specific* legatees. 1 *Madd. Chan.* 228. (*N. Y.* ed. 1817.) *Maddock* says *pecuniary* ; but he means only those pecuniary, which are also specific, as all general legatees are expressly excluded. To shew that not even creditors, nor specific legatees, can come against the purchasers in this case, see *Whale* v. *Booth,* 4 *Term Rep.* 625. n. *Nugent* v. *Giffard* & al. 1 *Atk.* 463. *Mead* v. Lord *Orrery* & al. 3 *Atk.* 235. *Ewer* v. *Corbet,* 2 *P. Wms.* 148.

*Hungerford* and *Waite*, contra, contended, 1 That the suit was properly brought with respect to the parties. The subject matter of the suit is one fourth part of the testator's estate, which was to be retained by the executors, and ultimately disposed of according to the directions of the will. The controversy is with respect to the disposition of this fund. It is propper, that the persons claiming this fund should unite in calling for it ; and that all the persons holding it, or interested to defeat the claim of the plaintiffs, should be brought before the court as defendants. This was done in *Lupton* & al. v. *Lupton* & al. 2 *Johns. Chan. Rep.* 614.

2. That the case, as it appears on the face of the bill, is within the jurisdiction of the superior court. The claim of the plaintiffs is for *money*, to which they say they are entitled under the will ; and the bill avers, that the sum to which they are so entitled, amounts to 700 dollars. Further, the matter or thing in demand, in this suit, is the appraised value of the estate claimed by the executor ; which the bill avers to be 852 dollars, 50 cents.

3. That the plaintiffs have not adequate remedy at law. In the first place, if they were to proceed at law, they could not get satisfaction ; for the executor is insolvent, and it does not appear, that he has any responsible surety. But in the next place, a court of law could not render a judgment, which would do justice either to the plaintiffs, or to the defendants, as between themselves respectively.

4. That the several conveyances, by *Augustus Bushnell*, of the estate devised, by the testator, for the benefit of the plaintiffs, are invalid.

First, the estate thus devised was a *conditional* estate, and not an absolute estate in fee. The payment of the several sums given by the will to the plaintiffs, was a condition annexed to the devise ; and upon the failure of the devisees to pay these sums, when they became due, they forfeited at law all their interest in the property devised. *Wheeler* & ux. v. *Walker*, 2 *Conn. Rep.* 196. *Co. Litt.* 236.*b*. *Farr* & al. v. *Newman* & al. 4 *Term Rep.* 621.

Secondly, the devise was made to three persons, and only one has attempted to convey. The most that he could do, if the devisees took a fee, would be to convey one undivided third part of the whole. *Treadwell* & al. v. *Bulkley* & al. 4 *Day* 395. 1 *Swift's Dig.* 137.

Thirdly, *A. Bushnell* has not even conveyed an undivided share ; but has given to different persons separate deeds of distinct parts of the property ; a mode of conveyance unauthorized by law. *Hinman* v. *Leavenworth,* 2 *Conn. Rep.* 244. n. *Starr* v. *Leavitt,* 2 *Conn. Rep.* 243. *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 495. *Griswold* v. *Johnson,* 5 *Conn. Rep.* 363.

Fourthly, if the executors, as such, had an implied authority, by the will, to sell, still the conveyances are not good, because they were not made by *Bushnell, as executor,* but in his *private* and *individual* capacity.

Fifthly, if the devise was to the executors in trust, the conveyances, nevertheless, are not good, because they were made in violation of that trust ; and of this the purchasers had notice. 2 *Swift's Dig.* 114. 115. 118. *Brown* v. *Higgs,* 8 *Ves.* 574.

DAGGETT, J. The general question presented is as to the sufficiency of the bill. To this four grounds of demurrer are relied on.

1. It is not alleged, that the superior court, to which the bill was brought, had jurisdiction. This depends on the allegations in the bill, tested by the 10th sect. of the act, *Title* 21. *Courts.* " The superior court shall have jurisdiction of all suits for relief in equity, wherein the value of the matter or thing in demand exceeds the sum of 335 dollars." The object of the bill is to obtain from the defendants certain sums of money alleged to be due to the plaintiffs from the defendants, under the will of *Ezekiel Jones.* They allege, " that their shares amount, with principal and interest, to the sum of 700 dollars, and that they are without any adequate remedy at law." It is difficult to see the force of this objection, when compared with the above recited allegation. Is not the value of the matter or thing in demand more than 335 dollars ? In *Pitkin* v. *Flowers,* 2 *Root,* 42. and in *Newtown* v. *Danbury,* 3 *Conn. Rep.* 553. it was decided, that if the value of the matter or thing in demand is averred in the bill in a suit in chancery, or in the declaration in an action at law, to be of the requisite amount, this is sufficient to give the court jurisdiction, though the value proved on trial should not be of that amount.

It is said, however, that, in *Griswold* v. *Mather,* 5 *Conn. Rep.* 435. this court held, that " on a bill in chancery for the conveyance of the legal title to mortgaged premises, the jurisdic-

*Middlesex,*
July, 1828.

Judd
*v.*
Bushnell.

*Middlesex,* tion of the court is determined by the value of such premises ;"
July, 1828. and that the same doctrine prevailed in *Watson* & al. v. *Wells,*
5 *Conn. Rep.* 469. in a suit " for confirmation of a defective
title under a mortgage deed." The principle established, in
those cases, does not bear at all upon the point now under con-
sideration, because it was very properly admitted in argument,
and has not been denied, by any member of the court, that
whatever estate *Augustus Bushnell* took under the will, *if it
was a conditional or trust estate,* (the great question on the de-
murrer,) he was bound to pay the plaintiffs the apprized value
of the estate devised ; and this apprized value is averred in
the bill to be 652 dollars, 50 cents. As then, by the conces-
sion of all parties, if the bill has merits, the plaintiffs are en-
titled, under the will, to more than 335 dollars, and have so ex-
pressly alleged, the supreme court had jurisdiction ; and this
objection, therefore, is without force.

2. The defendants insist, that the plaintiffs have remedy at
law, if there be any remedy. This remedy, it is said, is on the
bond given by *Bushnell,* as executor, to the judge of probate.
Waiving the question whether a bond could furnish the reme-
dy sought, or adequate remedy, it does not appear, that any
bond was given ; but it is averred, that *Augustus Bushnell* was
and is insolvent. Moreover, if the views of the plaintiffs are
correct, that the estate devised may be followed into the hands
of the purchasers with notice, then a court of law could fur-
nish no adequate or proper remedy ; for the defendants, the
purchasers under *Augustus Bushnell,* must either satisfy the
claims of the plaintiffs in proportion to their interest in the
land purchased, or surrender it to the plaintiffs as sought in the
bill ; and, in either case, a court of chancery alone could do
justice to the parties.

3. It is objected, that here is a misjoinder of parties plain-
tiffs, and also of parties defendants. This again depends en-
tirely on the principal question, what estate did *A. Bushnell*
take under the will ? If it be an estate in trust, or upon con-
dition that he should pay the plaintiffs that to which they are
entitled under the will ; and if these purchasers are to be af-
fected by that trust or condition ; then the objection vanishes.
This opens to us the question on which the sufficiency of the
bill must turn, *viz.*

4. What estate did *Augustus Bushnell* take under the will
of *Ezekiel Jones ?* Three executors are named as devisees of

certain lands of the testator, about which the question arises. *Middlesex,* One of them died before the testator, *viz. William Chapman.* July, 1828. Another, *Benjamin Chapman,* resided abroad, and has never accepted the trust or acted under the will. *Augustus Bushnell* alone assumed the trust imposed. These being the facts, the counsel for the plaintiffs contend, that *Augustus Bushnell* took only *one* undivided third part of the lands devised agreeably to the doctrine of the Court of Errors in *Treadwell* v. *Bulkley,* 4 *Day* 395. and therefore, they urge, that *Bushnell* could convey nothing in severalty, according to the case of *Griswold* v. *Johnson,* 5 *Conn. Rep.* 363. On this part of the case, an idea has been suggested, which, perhaps, removes any supposed difficulty from that source. It appears on the bill, that the whole land devised by the will to the three executors, has been, by a decree of the court of probate, distributed to *Augustus Bushnell,* and the decree remains in force. Can then this court collaterally regard it otherwise ? Must not that decree be revised, if at all, on an appeal to the superior court, according to the provisions of the statute in relation to decrees of the court of probate ? As the question may be decided without reference to the idea thus suggested, a further consideration of it is waived.

Judd
*v.*
Bushnell.

Considering the cause to depend on the same question as though *Augustus Bushnell* were the sole devisee, I enquire what estate did he take ? The rule is undoubted, that if a person gives lands to another by will, with a direction that the devisee shall pay a gross sum out of it, the devisee will take an estate in fee, without any other words. Though the rule is generally applied to questions whether the devisee take an estate in fee or for life, yet it governs in this case. The operative words of the will on this point, are : " And after the foregoing disposition, my other estate, being appraised according to law, one fourth of the same, as *per* inventory, shall be retained and holden in the hands of my executors, who are hereby ordered and directed to pay over annually to my said daughter *Hannah,* the interest of said fourth, during the minority of her children, at the expiration of which, said executors shall pay over said fourth, at inventory prices, in money, into the hands of said children, as soon as they shall come to full age, in equal proportion ; who shall, thereupon, obligate themselves to pay annually the interest of such part as may fall to them, to their mother, during the term of her natural life." As then the de-

visees were to pay a gross sum in money, to be ascertained by an appraisal of the land, an estate in fee was given.   6 *Cruise's Dig.* 253.

But was the estate conditional or absolute ?   If the former, it may be pursued into the hands of *bona fide* purchasers with notice.   If the latter, the conveyances were good, and *Augustus Bushnell* was only liable personally to the plaintiffs.   It seems, the testator had four daughters, *Caroline, Lydia, Ethelinda* and *Hannah*.   The first provision of the will in relation to these, his only  children, is, that the three former daughters were to receive 117 dollars each, to make them equal to *Hannah*.   Then he directs, that one fourth of his estate shall be holden, by the executors, to pay, in  manner above stated, to *Hannah,* the other daughter, and her children.   One of these children, *viz. Hannah,* has received her share under the will. The other two children, *Jehiel* and *Enoch,* with their  mother, *Hannah,* are the plaintiffs.   The other three daughters were the wives of the three  persons named as executors, and to whom all the rest of his estate was given.   The object of the testator is apparent ; he intended to make all his children equal sharers in his estate ; but in relation to *Hannah,* who had three children, her share was limited to her life, and was then to belong to her children.

The will also shows an intention, that the fourth part devised to the executors, for the benefit of *Hannah* and her children, should be retained, and holden by the  executors for that purpose ; and by the rules of law, this intention is to govern.   In the case of *Wheeler* v. *Walker,* 2  *Conn. Rep.* 196. the doctrine on this subject of a conditional fee, devised  by will, was fully considered by the court.   " The words, which constitute a condition, may be various.   In  particular words there is no magic."   The words, *paying, to pay, so that he pay,* constitute a condition.   The words used by the testator, in this will, are, the fourth part " shall be  retained and  holden in the  hands of my executors, who  are hereby  ordered and directed to pay," &c.   Again, " said executors shall pay over," &c.   Had the devise of the lands been  to them, *to pay,* or *they paying,* or *so that they pay,* or *they paying  thereout,* or *to pay thereout,* there could be no doubt.   It seems to me, that the words  here used, taken with the context, are equally strong to show a condition.   But let us look at other cases.   In *Jackson* d. *Townsend* v. *Bull,* 10 *Johns. Rep.* 151.   *Kent,* C. J., says : " When

the charge is on the person, the devisee takes the estate, *on Middlesex, condition of paying the charge ;* and if he die in the life-time July, 1828. of the testator, the charge ceases ; and if he refuse to accept and perform, the devise is void, and the heir may enter." In *Glen* & ux. v. *Fisher,* 6 *Johns. Ch Rep.* 33, 35. the Chancellor recognizes the doctrine, and adds : "He, who accepts a benefit under a will, must *conform to all its provisions,* and renounce every right inconsistent with them." In *Jackson* d. *Ruggles* v. *Martin,* 18 *Johns. Rep.* 31. 35. Ch. J. *Spencer* quotes the decision in 10 *Johns. Rep.* with approbation. In *Cowper* 841., in the latter part of the case of *Doe* v. *Fylder,* Lord *Mansfield* observed, that in the cases in which a fee is inferred, because the devisee was charged with the payment of a gross sum, " the doctrine began when the modification of uses was by the way of condition ; and charging a devisee with the payment of a gross sum, was looked upon as a condition, the non-performance of which, amounted to a forfeiture of the estate : The direction was to pay a sum of money by way of condition, and the heir enters for condition broken."

Judd
*v.*
Bushnell.

But another difficulty occurs upon the construction, contended for, by the counsel for the defendants. If the charge be not on these executors *in respect of the estate in their hands,* they take only a life-estate. Such is the doctrine of Chancellor *Kent,* in 10 *Johns. Rep.* 157. and 6 *Johns. Ch. Rep.* 33. before cited ; also in 4 *East* 496. 5 *East* 87.

In view of these authorities and the will in question, I am satisfied, that the estate devised is a fee, upon the condition that the devisees performed the directions of the testator in relation to *Hannah* and her children ; and that it is within the power of a court of equity to compel such performance against the executor *Bushnell,* and purchasers with notice ; and, therefore, the demurrer must be overruled, and the bill holden sufficient.

PETERS and LANMAN, Js. were of the same opinion.

HOSMER, Ch. J. dissented.

BRAINARD, J. was absent.

Demurrer overruled.