ORVIS *against* NEWELL:

IN ERROR.

*A* and *B,* having given their note to *C,* by which they jointly and severally promised to pay him 450 dollars, executed to him a mortgage of six pieces of land, three of which were owned by *A,* and the other three, by *B.* Shortly afterwards, *A* mortgaged one of his pieces to *D,* to secure a debt due from *A* to him of 100 dollars. *D* then became the legal owner of the first-mentioned note and mortgage, by assignment from *C. D,* having foreclosed the mortgage for 100 dollars, brought a bill against *A* and *B,* to foreclose the larger mortgage executed by them. It appeared, that *B* signed the note and executed the mortgage, merely as the surety of *A ;* and on this ground, *B* claimed that he, on paying the first mortgage only, was entitled to stand in the place of the mortgagee, and hold the entire mortgaged premises for his indemnity. Held, 1. that a party claiming the rights of a surety, must show that those to be affected by such claim, knew, or had the means of knowing, of its existence; 2. that in this case, neither the record of the first mortgage, nor the note, furnished notice to *D,* of any claim of *B,* as the surety of *A,* and no actual notice being found, *D* ought not to be charged with notice ; 3. that *D,* being a *bona fide* purchaser of the first mortgage, without notice, ought not to be affected by the claim of *B.*

Where two makers of a promissory note jointly and severally promise to pay, the presumption of law is, that they are responsible equally ; though this presumption may be rebutted, (where the fact is material,) by proof that one signed as surety of the other.

Though a creditor cannot tack a debt not secured by mortgage to an existing mortgage debt, so as to make the former a charge upon the land; nor a subsequent mortgage to a prior one, against an intervening incumbrance ; yet a mortgagee may take another mortgage, which will be valid against an intervening incumbrance implied by equity, of which the mortgagee had neither actual nor constructive notice.

THIS was a bill in chancery, brought originally by *Roger S. Newell* against *William Orvis* and *Ebenezer Orvis,* for a decree of foreclosure. The bill stated, that the defendants, on the 3rd of *January,* 1842, mortgaged six pieces of land in *Farmington* to the *First School Society of Farmington,* to secure the payment of a note given by them and *Adna Whiting,* on the 17th of *January,* 1837, in which, for value received, they jointly and severally promised to pay, on demand, the sum of 450 dollars, with annual interest ; that on the 6th of *May* 1843, the *First School Society of Farmington* assigned all their interest in the note and mortgage to the plaintiff, by virtue of which he became the legal owner thereof ; and that no part of the mortgage debt had ever been paid.

*William Orvis* filed a cross-bill, showing, that of the six pieces of land in the plaintiff's bill mentioned, three were his own property, and three the property of *Ebenezer Orvis*; that he was merely a surety for *Ebenezer,* whose duty it was to pay the mortgage debt; that on the 16th of *February,* 1842, *Ebenezer* mortgaged one of his aforesaid pieces of land to *Newell,* to secure a note for 100 dollars; which last-mentioned mortgage *Newell* has since foreclosed : praying that, upon his paying the school society debt, *Newell* should be compelled to convey to him all the right derived from the first-mentioned mortgage.

The court found the facts stated in the bill and the cross-bill to be true, and passed a decree in the usual form, regarding the first mortgage ; and further decreed, that if *William Orvis* should pay to *Newell* both debts, *Newell* should convey all his interest in all the mortgaged lands, to him.

This decree *William Orvis* sought, by motion in error, to reverse.

*Toucey,* for the plaintiff in error, contended, 1. That *William Orvis,* the surety, had a right to redeem the whole mortgaged premises, and have the whole conveyed to him, on payment of the mortgage debt. On such payment, he is subrogated to the rights of the first mortgagees, and stands in their place, and is entitled to an assignment of the mortgage; which will be a valid and effectual security in his hands until the money is repaid to him. The rule is universal, that a surety paying the debt, is entitled to all the securities of the creditor.

2. That *Ebenezer Orvis,* the principal, had a right to redeem the three pieces that were owned by him, on payment of the whole mortgage debt and costs. This was his equity of redemption, when he mortgaged one of these pieces to *Newell.* It was his whole estate, the whole title, the whole equity that he had. And as to that one piece, he had a right to redeem it, by paying the whole debt ; and that was his whole right as to that piece.

3. That *Newell* having a mortgage from *Ebenezer Orvis* of one of these three pieces, has the same right precisely, and no greater. He succeeds to the same title, and the same equity. It does not become enlarged in his hands.

*Hartford,*
*June, 1845.*

Orvis
*v.*
Newell.

4. That *Newell* is not entitled to tack to the first mortgage his subsequent mortgage. He gains no advantage whatever, by getting the first mortgage into his possession. He stands on the same ground precisely, as if *William Orvis,* the surety, had redeemed it, and *Newell* now sought to redeem it out of his hands. This he could not do, without paying the debt.

5. That *Newell* had notice of the mortgage, by the record. In the first place, a piece of land mortgaged to him, was, by the record, expressly pledged to secure the debt, and dedicated to its payment. He knew the debt was on the land, and that the right was indisputable to apply that land to the payment of the debt, before he could get any security. Secondly, notice of the mortgage is not only notice of what appears on the face of the mortgage itself, as that the land is sequestered for, and dedicated to, the payment of the debt; but it is notice of all the incidents, and of all the properties, qualities and circumstances of the estate, and puts the party on enquiry. Thirdly, the record showed, that the land was subject to the debt, and did not show any fact by which it could be delivered. The party must necessarily enquire into that, out of the record; as into a payment, release or any other collateral fact, that might relieve the land.

6. That a stranger volunteering to advance the money, would have a right to hold the land against the second mortgagee, until he was repaid. Does a surety, in a court of equity, stand on worse ground than a mere stranger?

*Hooker,* for the defendant in error, after admitting the general principle, that a surety who has paid the debt, is entitled to the benefit of all securities held by the creditor against the principal; and that, in the present case, if the rights of *Newell* were not involved, *William Orvis* would be entitled to the relief sought; insisted, 1. That *Newell,* being a subsequent mortgagee, without notice of the equity of *Orvis,* has a better equity. In the first place, the rights of a surety are often thus postponed to the equities of third persons. 1 *Johns. Ch. R.* 414. 2 *Penn. R.* 298. *Eddy* v. *Traver & al.* 6 *Paige,* 521. 525. 5 *Dana* 243. Secondly, it is the policy of our law, that all claims operating as incumbrances on real estate, should appear on record. *Hart* v. *Chalker,* 14 *Conn. R.* 77. *Booth* v. *Barnum,* 9 *Conn. R.* 286. *St. An-*

*drews Church* v. *Tompkins,* 7 *Johns. Ch. R.* 14. 16. *Frost* v. *Beekman,* 1 *Johns. Ch. R.* 288. 299. Thirdly, in this case, it does not appear on record, according to the finding, that *Orvis* had any claim as surety. The rule of law is, that where two persons are named in an instrument, if it is not expressly declared otherwise, they will be deemed to be interested *equally.* 1 *Sw. Dig.* 104. *Treadwell* v. *Bulkley,* 4 *Day,* 395.

2. That the school society, the original creditor, having a larger fund for their security, a minor portion of which is pledged to *Newell,* equity will require them to satisfy themselves from the rest of the fund, if sufficient, leaving to *Newell* the whole of the portion pledged to him; and *Orvis,* if substituted in the place of the creditor, can have no better right, and of course, cannot appropriate the fund pledged to *Newell. The York and Jersey Steam-Boat Ferry Company* v. *The Jersey Company, Hopk.* 460. 469. *Conrad* v. *Harrison,* 3 *Leigh* 532. *Cheesebrough* v. *Millard,* 1 *Johns. Ch. R.* 409. 414. *Hawley* v. *Mancius,* 7 *Johns. Ch. R.* 174. 184. *Evertson* v. *Booth,* 19 *Johns. R.* 486. 492, 3. *Osborn* v. *Carr,* 12 *Conn. R.* 195. 202, 3.

WILLIAMS, Ch. J. The facts stated and found, so far as they are important to the question arising in the case, are these. *William* and *Ebenezer Orvis* were indebted, jointly and severally, in a debt now the property of *Newell,* and secured by lands owned by them individually; *William* owning three pieces, and *Ebenezer* three. *Ebenezer,* being indebted to the plaintiff, *Newell,* mortgages one of his pieces of land to *Newell;* and *William Orvis* claims to redeem, paying the first mortgage only, as he was a mere surety for his son *Ebenezer.* On the other hand, *Newell* claims, that if he would redeem *Ebenezer Orvis's* land, he must pay all the charges upon it, before he can be entitled to it.

*William Orvis* rests his claim upon the fact that he is surety, and as a surety, upon payment of the debt, is entitled to all the benefits which the creditor was entitled to, by virtue of the original mortgage; and there can be no doubt that as between him and his principal and the creditor, who knows of this relation, this position is correct.

But the claim of *William Orvis* goes further, and extends

Hartford,
June, 1845.

Orvis
v.
Newell.

to all persons deriving title under *Ebenezer Orvis.* * He says, such persons can have no greater rights than *Ebenezer Orvis* himself; that *Ebenezer* had no equity until this debt was paid, and so his creditors can have none. It is, however, to be remarked, "that this right of substitution or subrogation rests upon the basis of mere equity and benevolence;" (2 *Johns. Ch. R.* 419.) and it is not to be applied so as to defeat the very equity which led to its adoption. This has been attempted, in several cases, and has met with no countenance from this court. *Hartford Bank* v. *Belcher*, 15 *Conn. R.* 381. *Stamford Bank* v. *Benedict*, 15 *Conn. R.* 437. There are many cases where a *bona fide* purchaser can acquire rights, which the vendor himself had not;—as where one purchases from another an article which he had no right to sell, but the owner stands by, without objecting; or where one purchases *bona fide* of a person who had before conveyed by a fraudulent deed, or by a good deed which remains unrecorded. In this case, *Newell* is in a condition similar to that last-mentioned; he is a *bona fide* purchaser of *Ebenezer Orvis*, to the extent of his debt, having no knowledge of the claims of any other person, so far as the records show. He examines the title; he finds no incumbrance, except that of the school society; and he finds that this debt rests upon five other pieces of land. He makes his calculations, therefore, and becomes satisfied, that if this debt is paid from three several pieces of land, in equal proportions, there is enough left to pay his debt, by the land on which he takes a new mortgage. Why then shall he not be protected in it? He is ready to do entire justice to the real creditor, and does it, by paying him his debt, thus gaining to himself adequate security for his own debt.

But then he is met by a claim, which the original creditor could not have made; a claim in fact that this incumbrance, spread over six pieces of land, should be paid by three of them; in short, he is surprised, by the springing up of a private invisible mortgage, unknown to the law, but which, he claims, is the offspring of equity, by which his supposed security is rendered worthless. Had *William Orvis* taken a mortgage deed from *Ebenezer* to secure him from this suretyship, it would have availed him nothing, unless he had put it upon record. And is it possible that this invisible lien, rest-

ing upon the mere basis of equity, the mere creature of equity, and to be moulded by the principles of equity, is to have an operation which a deed itself could not have? In short, is the implied contract raised by a court of equity, more extensive and efficient than an actual agreement to the same effect, made by the parties, would have been?

No writings between these parties show that *William Orvis* was a surety. If *Newell* looks at the note, he finds it is signed by *Ebenezer* and *William*, jointly and severally. If he looks at the deed, he finds it is given to secure that note. Now, if a deed of land is given to two or more, the rule of law is, that they take in equal proportions. *Treadwell* v. *Bulkley*, 4 *Day*, 395. 1 *Sw. Dig*. 104. It is so in a conveyance of personal property. So an obligation to two or more persons, implies they are equal owners. And so, if there are several partners, it is supposed they are partners in equal shares. In case of personal property, however, it may be shown, that the fact is otherwise. On the other hand, if two sign a receipt for money had, or an obligation that they will pay money, the import is, that they have received it, and will pay it, equally. But it was held in *Stratton* v. *Rastall*, 2 *Term R*. 366. (by two judges to one,) that one of the signers of a receipt might show he was a surety, and that the parties did not stand exactly in the relation that the writing seemed to import. The same has been holden with respect to the signers of a note. *Harris* v. *Brooks*, 21 *Pick*. 195; and so it was held, by the superior court, in this case.

This, however, is not all. To claim the rights of a surety, it must be shown, that those who are to be affected by it know the fact, or had the means of knowing it. Thus, in the case of *Stratton* v. *Rastall*, the court proceeded upon the ground that that fact is admitted by the answer. In *Harris* v. *Brooks*, where it was claimed, that a joint signer of the note was a surety, and discharged by certain conditions of the plaintiff, the judge left it to the jury, whether he was a surety, and that known to the holders; and it was said, by the chief justice, that the words principal and surety would not affect the terms of the contract, but indicate the relations the parties stood in to each other, and not such relations to the holder ; and he said further, that the presumption that they were equally responsible, might be rebutted, by showing

Hartford,
June, 1845.

Orvis
v.
Newell.

that one signed as a surety for the other. And in the case of *Neimcewicz* v. *Gahn,* where a wife had mortgaged her own property to secure the bond debt of her husband, the court held, that she was to be treated as surety for her husband ; but that the fact of suretyship must be proved, it not appearing upon the face of the instrument. 3 *Paige,* 651. This case was taken to the supreme court of errors, and the decree affirmed, without a dissenting opinion, except on the point whether there was evidence of knowledge of that fact. 11 *Wend.* 123.

It was said in the argument, that *Newell* had constructive notice from the record, that this land was pledged for this debt, and must be applied to that purpose. He had indeed ; but he did not know, that three pieces of the six were first to be taken for this purpose ; and that is the very difficulty of the case. By the record, he could see, that the land, and the whole land, was devoted to that object ; and *William Orvis* would now show, that the only part of the land, *viz.* that of *Ebenezer Orvis,* should be first taken ; and of course, that the whole land was not so pledged, unless the whole was necessary to pay the debt.

It is said, there was here enough to put the party upon enquiry. If the presumption of law is as has been shown, we see nothing for him to enquire about. If these writings had a legal import, such as we have shown, he might fairly act accordingly. If he looked at the deed, he would get all the notice in relation to their contract, that the parties had chosen to publish to the world. If he went further, and examined the note, he obtained all that they chose to give even to those with whom they immediately contracted. The case is not like that of *Bolles* v. *Chauncey,* 8 *Conn. R.* 390. where there having been record evidence given, the court held, that the party who acted in face of that notice, must see that he gained true information, or must suffer for it. Here is no intimation from the record or the note of the real state of facts as now claimed by the party ; of course, nothing is shown to excite enquiry. The case from *New-York,* above cited, was a much stronger case. There, the debt, upon its face, appeared to be the husband's debt ; but as it might have been contracted for the benefit of the wife's estate, the court held, that the creditor was justified in treating her as a

principal; and Ch. J. *Nelson* says, that to discharge the surety, not only the fact of suretyship must exist, but it must be known to the creditor, at the time complained of. If the fact appear upon the face of the security, that is enough; if not, the knowledge of it must be brought home to the creditor, by the surety, clearly and satisfactorily; because, as all parties appear upon the instrument as principals, it is deceptive and calculated to mislead. The surety, therefore, should be holden to strict proof.

Apply the reasoning of the learned judge to this case. If *William Orvis* would claim the right of a surety, and he appears as a surety upon the note and deed, that is enough; if not, he must bring home to *Newell*, the creditor, clearly and satisfactorily, knowledge of the fact that he was surety, instead of saying he was put on enquiry. But there is here no pretence that *Newell* had knowledge. *William Orvis*, instead of appearing on the written instruments as a surety, gives the public to understand he is principal; and now, when a third person has, upon faith of this supposed fact, placed his property in the hands of another party to this contract, *William Orvis* throws himself upon his unknown, invisible rights as surety, and asks the aid of a court of equity to protect him in that character.

Something was said, that as our law does not allow of tacking mortgages, *Newell* could not tack his last debt to the former. We cannot see any thing in this case analogous to the doctrine of tacking, repudiated by our courts. We have, indeed, held, that the creditor could not tack a debt not secured by mortgage on to his mortgage debt; nor could he tack a subsequent mortgage to a prior one against an intervening incumbrance. But it has not been decided, that the mortgagor could not tack another incumbrance on to that which he had already given; and that this would not be valid against an implied or equitable incumbrance.

On the whole, we are of opinion, that neither principle nor authority is shown to require the reversal of this judgment.

In this opinion the other Judges concurred.

Judgment affirmed.