# THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN SWINBURNE, Respondent, v. THE TRUSTEES OF THE ALBANY MEDICAL COLLEGE, Appellants.

*Medical colleges — what provisions of the Revised Statutes are not applicable to them — R. S., part 1, chap. 15, tit. 1, art. 2 — Notice of meetings of trustees — it need not be personally served, unless that be required by statute or a by-law.*

The provisions of article 2, title 1, chapter 15, part 1 of the Revised Statutes (1 R. S., 460), apply only to literary institutions and are intended to control the colleges, academies and schools for literary instruction, to the exclusion of the schools for teaching special sciences.

The Albany Medical College, created by chapter 26 of 1839, is not subject to or controlled by the said provisions.

There was no provision in the charter or by-laws of the Albany Medical College prescribing what notice of meetings should be given to the members of the board of trustees. It had been the custom for many years to notify the members of the meeting through the mail. The relator was removed from his office or position of professor in the college at a meeting at which a majority of the trustees were present, and of which meeting notice had been served upon all the trustees by depositing in the post-office at Albany, addressed to each trustee, a postal card containing a notice of the time and place of such meeting.

*Held,* that in the absence of proof showing that all the members did not in fact receive the notices so sent it would be presumed that they were received; that such notice was sufficient and that the meeting was regularly held.

APPEAL by the defendants from an order of a Special Term directing that a peremptory *mandamus* issue, addressed to the defendants, commanding them to reinstate the relator in the position of professor in the Albany Medical College.

*A. J. Parker*, for the appellants.

*N. C. Moak* and *F. J. Swinburne*, for the respondent.

RUMSEY, J.:

The board of trustees of the Albany Medical College consists of twenty-five members. By its charter (chap. 26, Laws of 1839, § 4), it has power by a vote of two-thirds of the members constituting the board to remove professors. The relator had been for some years professor of clinical surgery, fractures and dislocations. On the 2d day of January, 1880, at a meeting of the board, at which twenty-one members were present, a resolution was passed by which the chair of fractures, dislocations and clinical surgery was abolished; seventeen trustees voting for the resolution, and four voting against it. The relator was thereby, as he claims, removed from his professorship. He moved at Special Term for a writ of *mandamus* to the defendants commanding them to reinstate him.

The ground of the application is that no legal notice of the meeting was given to the trustees. It appears by the affidavits used to oppose the motion that the members of the board were notified of it by sending to each one a postal card, and that it has been the practice to notify the members by mail for many years. The relator claimed that a legal notice of this meeting could only be given by publication in a newspaper printed in Albany county for at least six days. This was not done. The Special Term held that this was the statutory notice; that none other was valid; and that for want of it, the proceedings at the meeting of January second were void, and granted the writ.

The relator insists that the Albany Medical College was subject to the provisions of article 2, title 1, chapter 15, part 1, Revised Statutes (1 R. S., 460), entitled "Of the Powers and Duties of the Trustees of Colleges." Section thirty-three of that article provides that notice of the time and place of a meeting of the trustees

shall be given in a newspaper printed in the county where such college is situate, at least six days before the meeting.

The first question before us is whether this institution is subject to the provisions of that article.

Chapter 15 is entitled "Of Public Instruction," and contains regulations for the Regents of the University, colleges, academies and schools for general literary instruction. Article 2 of the chapter is entitled "Of Colleges." It fixes the number of trustees at not more than twenty-four, nor less than ten, of which a majority shall be a quorum. It permits each corporation, subject to its provisions, to hold property of the annual value of $25,000; to remove professors in a particular manner, and to grant literary honors. Some of these provisions are unlike those granted to the Albany Medical College, and one at least, the right to grant literary honors, is entirely inconsistent with, and outside of the power of this college. The charter of the defendant college expressly makes it subject to the provisions of chapter 18, part 1, Revised Statutes. Like chapter 15, title 3 of chapter 18 contains a specification of the powers of the incorporations subject to it, and it contains a provision that no corporation shall possess any powers, except such as are expressly given by its charter or by section 1 of that title. An examination of the two chapters will show that considerable inconvenience might be produced, by holding that the Albany Medical College was subject to the provisions of both.

The intent of the legislature will be best carried out, we think, by holding that chapter 15 applies only to literary institutions and is intended to control the colleges, academies and schools for literary instruction to the exclusion of the schools for teaching special sciences. This intent strongly appears from subsequent legislation. In 1853 the legislature established a complete system for the organization of medical colleges, different from that contained in chapter 15, prescribing their general powers, and in terms making them subject to the provisions of chapter 18. (Laws of 1853, chap. 184.) It is noticeable that the same act provides for the incorporation of colleges by the regents. If it had been supposed that chapter 15 applied to medical colleges this new act need not have been passed, and we must accept this act as an authoritative declara-

tion of the legislature that chapter 15 did not apply to medical colleges.

It follows that notice of meetings of trustees of the Albany Medical College was not required to be published as directed in chapter 15, and that no special mode of giving notice is prescribed.

The learned counsel for the respondent insists that if that is so the common law rule applies, and that rule requires notice to be served personally on each trustee.

It is undoubtedly the rule of the common law that, unless the statute or the by-laws of a corporation prescribe the notice to be given of a meeting, each member must have actual notice, and in default of such notice proceedings had at it are invalid except all are present and concur in the act   (*Rex* v. *Liverpool*, 2 Burr., 723; *Rex* v. *Chetwynd*, 7 B. & C., 695; Potter on Corp., § 336, and cases cited; *Wiggin* v. *Elders, etc.*, 8 Metc., 301.)   There is no reported case in this State which we can find prescribing the manner of service of such notice.   Nor can we find any decided case in the books in which it is held that the notice must be personal as distinguished from actual.   It is true that, in a note to section 337 of his work on corporations, Judge POTTER says that the notice must be personal, but he does not so state in the text, and neither the cases he cites, nor any other cases, so hold.   In *Rex* v. *Liverpool* (2 Burr., 723–731) the objection to the validity of the meeting was that no notice had been given, and Lord MANSFIELD held that each member must be actually summoned.   In *Stow* v. *Wyse* (7 Conn., 214) the vote in question had been taken at a meeting of which no notice had been given.   The point decided was that the vote was not valid.   No question was made as to the kind of notice required. So in *Wiggin* v. *Freewill Baptist Church* (8 Metc., 301, 310) the notice had been given by posting in three places.   The court do not pretend to say what kind of notice was required, but holds only that the members must all have notice, and that the notice there given was not sufficient.   In *Taylor* v. *Griswold* (2 Green. [14 N. J. L.], 222) and in *Savings Bank* v. *Davis* (8 Conn., 191), cited by Judge POTTER, the question was not involved.   The result of the decisions is that an actual notice must be given to each member, and we are not required to hold that such notice must be personal.   Such notice as is required in legal proceedings need not be given, for the notice

of the meeting is sufficient if verbal (Wilcock on Mun. Corp., 46), or if given by letter to non-residents (*Stebbins* v. *Merritt,* 10 Cush., 27), or if left at the house of a member in his absence (Angell and Ames on Corp., § 492). It is clear that the important thing is to bring to the knowledge of each member the fact that a meeting is to be held. If each member has that knowledge the cases agree that the meeting is valid.

In this case it appears that for many years the custom has been to call meetings by notices sent through the mail. Each member must be presumed to be cognizant of it. We can take judicial notice that in a large city like Albany there is a delivery of mail at the house of each person several times during the day; and the presumption of law is, that communications so sent were delivered. (*Bell* v. *Lycoming F. Ins. Co.,* 19 Hun, 238 ; *Briggs* v. *Hervey,* 130 Mass., 186 ; Whar. Ev., § 1323.) In this case it appears that every trustee was notified. Many years ago this court held that in business matters where notice was required, sending notice by mail was sufficient. (*Utica Bank* v. *Van Gieson,* 18 John., 485.) We see no reason for not applying that rule to notices of a meeting of this kind, and holding those notices sufficient, unless it appears affirmatively that they were not delivered to some one of the trustees. No objection is made to the form of the notice. We think, therefore, that the meeting of January 2, 1880, at which the relator was removed, was valid.

It follows that the order of the Special Term must be reversed, and the motion for a *mandamus* denied, with ten dollars costs of this appeal and printing disbursements.

OSBORN, J., concurred.

LEARNED, P. J.:

I concur in the result. But I am not willing to say that where the majority (or the requisite number to do a certain act) of the trustees or directors of a private corporation have met and have acted, their action would be absolutely void if one trustee or director (or even several) had not been notified. I do not think that the authorities cited to this point establish it.

Furthermore, if this were so, it would be necessary for the

relator to sustain this writ, to show affirmatively that some trustees had not actually been notified. This he has not done.

Order awarding peremptory *mandamus* reversed, and motion for peremptory *mandamus* denied, with costs against relator.