Judge Carr.
It is a fundamental principle with Courts of Equity, that no man shall be forced to accuse himself; nemo tenetur prodere seipsum. In conformity with this maxim, those Courts have constantly held that a defendant may demur to a bill, calling on him to answer any matter which may subject him to fine, forfeiture, pains or penalties. Where the forfeiture or penalty is entirely in the power of the plaintiff, if in his bill he waives it, the defendant cannot demur, but must answer. The English Statute of Usury subjected the usurious lender of money, &c. to the loss of the sum lent. This, so far as it relates to principal and legal interest, the Chancellors have considered a penalty. When, therefore, a bill in equity called on the defendant to answer as to an usurious transaction, unless it waived the penalties of the act, and offered to pay the principal with legal interest, the defendant might demur. This practice of the English Courts, our Legislature have taken as the basis of the third section of our Act against usury; changing it only so far, as to subject the lender to the loss of all interest, and the payment of the costs of the Chancery suit. This *417 statute I have always considered as made merely to place that on the ground of ¿ato, which was before practice; not to narrow or widen that practice, nor to make any change, except that the lender shall lose all interest and pay costs. I consider every bill in equity, for relief against"usury, a bill under this section; that no man can come into that forum for relief from the principal sum borrowed, as that would be calling on equity to enforce a penalty; nor is he obliged to state in his bill that he has no evidence at all, and depends wholly on the answer; and if the answer deny the usury, he may prove it aliunde, if in his power. But however he may succeed, whether by the confession of the answer or other proof, I think, that in the language of the law, “the lender shall be obliged to accept his principal money without any interest, and pay costs, but shall be discharged from all other penalties of the act.”
My opinion, of course, is, that the decree be reversed, and entered according to the principles laid down.
Judge Green.
A bill was filed by the appellant against the appellee, to be relieved against a judgment at law, founded upon an usurious contract. The bill does not allege either that the plaintiff can or cannot prove the usury, without a discovery from the defendant; but, after stating minutely all the circumstances of the contract, and the subsequent transactions and payments, calls upon the defendant to answer many particular interrogations, affirmative answers to which would completely support the charges in the bill. There is no evidence of the usury, except the admissions of the answer, which are full.
The question is, as to the measure of relief; whether, under the provisions. of our statute, the plaintiff is to be relieved, upon the payment of so much of the principal sum as remained after deducting the payments made; or, under the principles of a Court of Equity, independent of *418 the statute, upon the payment of the balance of principal and legal interest remaining due after crediting the payments. The Court of Chancery adopted the latter rule, an(l was probably led to it by the discussions in Marks v. Morris; Stone v. Smith & Ware, and M'Pherrin v. King; the bill not stating that th.e plaintiff could not prove the usury, but by the oath of the defendant, and not praying specific relief in the terms of the act, so as to shew that he claimed the aid of the Court by virtue of the statute.
It will not be necessary to give any opinion as to the result to which the Court came in Marks v. Morris. Whenever that shall be necessary, it should be considered in a full Court. But, it is necessary to consider one of the propositions asserted in that case: that upon a bill to be relieved against an usurious contract, the Court must, apply the rule existing in Courts of Equity before, and independent of, the statute, unless the plaintiff prays relief upon the distinct ground that he has no proof of the usury, indepen. dent of the defendant’s oath, and shews otherwise, that he claims relief under the statute exclusively.
To understand the object of the third section of our statute, it is necessary to see what were the principles upon which Courts of Equity proceeded in giving relief against usurious contracts, independently of our statute.
A Court of Equity has no jurisdiction to enforce penalties; and it was held that the offence prohibited by the statutes of usury, was the taking of more than legal interest: that to take legal interest was not against the policy of the law: that the forfeiture of the whole of the money lent, ahd subjecting the usurer to the forfeiture of double the amount lent, in cases where he had received the usurious interest, (a forfeiture recoverable by any common informer,) were penalties provided to enforce this policy of the law: that, consequently, to declare the debt forfeited upon the application of the debtor, who was plaintiff, would be to enforce a penalty: but, to relieve against the usurious excess, would be to promote the policy of the law without *419 enforcing a penalty, and was warranted by the general principles of equity, which relieve against unconscionable advantages taken of the necessitous circumstances of distressed persons. In all such cases, the Court,, upon the maxim, that he who asks must do equity, relieves upon the condition that the plaintiff restore to the defendant what he has received from him. To effect these objects, it was necessary for the plaintiff, in a case of usury, expressly to waive the penalty of a forfeiture of the debt (which was in his power, no other being interested,) and to offer to pay the principal and legal interest.
It is also a rule of a Court of Equity, that a party cannot be compelled to answer any matter, if it might su;ject him to a penalty. His answer to a bill charging usury in the contract, even if the defendant had not received the usury*, would subject him to the penalty of the loss of his whole debt, unless the penalty was waived; and therefore, it must be waived by the plaintiff, to entitle him to the defendant’s answer. But, cases might occur, in which the defendant, by his answer, might subject himself to a penalty which the plaintiff could not waive; as, if the defendant had received the usurious interest, in which case he would be liable to a penalty recoverable by any informer. In such case, the defendant could not be compelled to answer to the charge of usury. But, if the plaintiff waived the penalty which was in his power, and could prove the usury without a discovery from the defendant, upo^ issue, he was entitled to relief. This relief, howetraí, ,WjpB measured by the same rule, whether the plaintifreha^ or had not the benefit of the defendant’s answer, up|>|i ¿¡0¡¡¡í payment of principal and legal interest; and this, |ecause the Court would, in no case, enforce a penalty, and hec|tt the party who had asked equity was, as a condition O^relief to him, required to do equity. The relief upon this condition, was not a reward to the defendant for making a discovery; the rule that a party should not be compelled to answer, so as to subject himself to a penalty, being appli *420 cable to the mode of proceeding in the cause, for the purpose of ascertaining the truth of the case, and having no influenee upon the measure of relief, that being determined by the fac(s ascertained, no matter how; and upon the principles that a Court of Equity would not enforce a penalty, and that he who asks equity must do it. These principles run through all the cases in the English Courts upon the subject,, and are elucidated by the cases of Bosanquef v. Dashwood, Cas. Temp. Talbot, 38. Brownsword v. Edwards, 2 Ves. 243, 249, and Seott v. Nesbitt, 14 Ves. 442.
In this state of things, the Virginia Legislature enacted that the borrower might exhibit his bill against the lender, for a discovery relative to the loan, or the re-payment thereof; and “ if thereupon it shall appear that more than lawful interest was reserved, the lender shall be obliged to accept his principal money without any interest, and pay costs; but, shall be discharged from all other penalties of this act.”
What was the object of this act, and what is its literal meaning? It applies to all cases, whether the money has been paid or not. The relief is to be given, if it shall appear that the contract was usurious, no matter how the fact may be made to appear. The sole object of the statute seems to be, to remove the difficulties before existing, to proceeding in Chancery, by abrogating by forceof the statute, in case of an application to equity for relief, the penalty of total forfeiture, whether the plaintiffin express terms waives that penalty or not; and in case of a payment of the usury, to abolish the penalty recoverable by an informer; so, that in all cases, the defendant might be justly compelled to answer, and the cause might come to hearing in Chancery, upon the bill, answers and proofs, instead of driving the party in the latter case to a demurrer to the discovery, and the Court to investigate the charge of usury, by an issue. One other object of the act was, to prescribe as the measure of relief, the payment of the principal only, instead of the principal and interest, as was before practised.
*421 This obvious and literal construction cannot, I think, be controlled by the preamble to the original act of 1734. That preamble is now no part of the existing law. A preamble may be resorted to for the purpose of aiding the construction of an enacting clause which is equivocal in its terms, but not to control the literal and unequivocal terms of the enactment; and if that preamble were now a part of the law, I should not think it had any effect upon the literal terms of the third section. The difficulty of proving usury, arising from the secrecy with which such contracts are usually made, might be a very sufficient reason for giving a Court of Equity jurisdiction, to give a general relief in all cases where usury appears, no matter in what way.
The consequence of the construction given to the statute in Marks v. Morris would be, that if the defendant admitted the usury, he would get back his principal without interest; but, if he denied it, and it was proved, one of these consequences would result; either the defendant would be entitled to his principal and legal interest, according to the principles of a Court of Equity exising before the statute, (in which case, he would receive a premium for falsehood and perjury;) or, the plaintiff would be relieved by the Court’s declaring that the whole debt, principal and interest, was forfeited; in which case, the Court would act directly against its most ancient and best settled principles, applicable to all other analogous cases; or the plaintiff would be entitled to no relief whatever; in which ease, the primary object of the Legislature, to benefit the borrower by facilitating his remedy in Chancery, and relieving him to a greater extent than he could have been relieved before, would be utterly frustrated in very many instances. I cannot believe that the Legislature intended to produce, by the act in question, any of these consequences; or if they did, that they would leave that object to be attained by doubtful constructions of the terms of the statute. If they had intended either of these con *422 sequences, they would have expressed that intent in unequivocal terms.
Upon the whole, I conclude that in all cases where a party applies to a Court of Equity for relief against an usurious comract, if he is entitled to relief at all, he must be relieved upon the terms prescribed by the statute; and that this decree must be reversed, and the injunction perpetuated, except as to so much of the principal debt as remains unpaid.
Judge Cabell.
The bill in this case contains no allegation of the ability of the complainant to prove usury, otherwise than by the answer of the defendant. On the contrary, it merely alleges that the contract was usurious, and calls upon the defendant directly and expressly, to answer to the usury, and prays to be relieved against the judgment, except as to the principal sum due; which principal, the complainant expresses his readiness to pay. The answer acknowledges the usury.
As the bill seeks a discovery, and asks the precise measure of relief indicated by the third section of our act of Assembly against usury, (1 Rev. Code, 373,) I cannot consider it- in any other light than as a bill exhibited under that section, and I am consequently of opinion, that the Chancellor erred in not conforming his decree to that section.
As the present is a bare Court, as none of the Judges are now present who decided the case of Marks v. Morris, and as it is not at all necessary to the decision of this case, (according to the view that I have taken of it,) that we should discuss any of the principles settled in Marks v. Morris, I studiously forbear to express any opinion in relation thereto.
Decree reversed.*

 Tlie President and Judge Coaeteh, absent.