Spann v. Sterns.

ELEANOR SPANN v. CHRISTOPHER H. STERNS' ADM'RS.

An offer to do equity does not consist in, or require, the actual payment or tender of payment of what is admitted to be due, nor that it should be brought into Court.

The jurisdiction of our Courts is without distinction between law and equity. Our Statute regulating interest declares that where more than twelve per cent. per annum is contracted for, the contract shall be void for the whole rate of interest only. In order to entitle the plaintiff to relief against the execution

Spann v. Sterns.

of a deed of trust for the full amount, on the ground that usurious interest is included therein, it is not necessary to offer to pay the principal sum and legal interest thereon; nor will the plaintiff be required by the decree, if the allegation of usury be proved, to pay more than the principal sum.

It would seem however, that the Court should interpose by injunction no further than necessary to afford the relief sought; and the correct practice would seem to be, to grant the injunction at first only for the interest, leaving the parties to the remedy they have provided for themselves, as to the principal admitted to be due.

See this case for a discussion of the general effect of the grant of jurisdiction to our Courts, without distinction between law and equity, and of the abolition of forms of action.

Appeal from Galveston. Tried below before the Hon. James H. Bell.

Suit by appellant, Eleanor Spann, against appellees, Elam Stockbridge and Melinda Stockbridge, administrators of Christopher H. Sterns. The original petition was filed Nov. 13th, 1855, and alleged several loans of money by Sterns to plaintiff, to secure which plaintiff gave deeds of trust on property with power to sell; alleged payments in money, and transactions in other property entitling plaintiff to credits; alleged special confidence in Sterns and afterwards in defendants; that plaintiff had kept no account, and that the defendants refused to account; alleged that defendants demanded interest at twelve per cent. per annum, whereas they were only entitled to eight; and that defendants were proceeding to execute the power of sale in the last deed of trust. It did not allege usury. It concluded with the following prayer : The premises considered, petitioner prays that your Honor will grant a writ of injunction enjoining and restraining the said (administrators and trustees) and all other persons acting under them or by their authority, from making said sales; that the _____ be cited to appear at the next Term of the District Court Galveston County, and answer this petition; that an account may be taken of all the matters and business transactions of petitioner and said estate; that the balance due by petitioner

may be judicially ascertained, and which amount she is ready and willing to pay ; and that if her said property or any portion must be sold, that no more than may be sufficient to satisfy and pay such balance may be sold, and that petitioners may have all such other and further relief in the premises, as justice may require and the law ordain.

On the 3d of June, 1856, defendants filed a general demurrer to the petition, and for special cause assigned—

1st. The petition on its face shows that there is a large amount due from plaintiff on the obligations therein mentioned as having been given to Christopher H. Sterns.

2d. The petitioner asks for the interposition of the Court, yet she does not do, or offer to do equity by paying, or tendering the payment of what, by her own showing, she honestly owes.

June 5th, 1856, plaintiff filed an amendment to her petition, in which she recapitulated the allegations of the original, and in addition thereto charged that usurious interest at the rate of twenty-five per cent. per annum had been exacted of her, and included in each of the said contracts of loan, by said Sterns ; alleged that the said Sterns, by his illegal and usurious reservation and taking of interest over and above the maximum rate allowed by law, has forfeited and lost all claim to any interest whatever on the forbearance and giving day of payment on the said sums so loaned by him to the said plaintiff, as aforesaid ; and the said plaintiff claims and insists upon the right to recoup the sums so paid for interest, &c.; prayer as follows : Wherefore the said plaintiff prays, in addition to the prayer made in and by her original petition, that the interest included in the principal sums mentioned and specified in the said promissory notes may be deducted therefrom, and that all sums of money now due, as well as that paid for interest in the settlement and discharge of the note bearing date the 26th day of February, A. D., 1852, for twelve hundred and twenty-six dollars and seventy cents, may be recouped and ap-

plied to the satisfaction and discharge of the principal sums actually lent and due upon the notes and deed of trust which the said defendants are now seeking to enforce ; and for such other and further relief, &c.

June 17th, 1856, case called, and demurrer to the petition sustained, &c.

*L. A. Thompson*, for appellant. I. The first point we make is, that there is no rule of law or equity which requires a borrower who seeks the aid of a Court as plaintiff, against an usurious contract, " to pay or tender the payment of what is admitted to be due." The rule as it is stated in Fonblanque and Story is as follows : " In equity, if the borrower seeks the " aid of the Court to have the usurious security delivered up " to be cancelled, or claims the enforcement of the Statute, re- " lief will only be decreed upon the terms of paying what is " really and *bona fide* due the defendant, and if plaintiff do not "make such offer by his bill, defendant may demur." (Fonbl. Eq. 24, n. (h); 1 Story, Eq. Jur. §301.)

II. But, it is contended, that the above rule is not applicable to her peculiar case, and she was no more bound to offer to pay what was really and honestly due upon the obligations, than she would have been, if the lender had come into Court to enforce his usurious security, and she had claimed the enforcement of the Statute in the character of defendant to such suit. Nor will the Court, in the position she occupies, in granting relief, impose the condition of paying the principal and legal interest ; or in other words limit the relief merely to the excess over and above the legal interest.

The rule above stated is sometimes said to be based upon the maxim, that he who asks equity must do equity ; and at other times upon the ground, that equity will not enforce discovery where the defendant will be subjected to a penalty. But the question as to the true foundation on which the rule

rests seems to be more satisfactorily solved by Sharkey, C. J. in Parchman v. McKinney, (hereinafter cited,) than by any other jurist.   He says : It has its foundation in the discretion which Courts of equity are said to possess in granting or withholding relief ; and as the cases in which relief was sought in a Court of equity were generally, and perhaps invariably, cases in which a remedy at law might have been had, or in which discovery was sought to sustain the defence at law ; and hence it has been said that the Court was not bound positively to interfere, but has a discretion on the subject, and may prescribe the terms on which relief will be given.   Now this Court is a Court of law as well as a Court of equity ; and unless it be contended, that in every case, this Court administering the law on equitable principles has no other rule than discretion, the principles which govern Courts of Equity where the jurisdictions of law and equity are separated, can have no application.

It is not, however, considered necessary to rest our argument entirely on this position ; for whatever may be the foundation or reason of the rule, it seems not to have prevailed in England in those cases where the lender upon usury takes as part of his security, a bond with warrant of attorney to confess judgment thereon.   In such cases, the borrower being precluded by the character of the security from an opportunity of presenting the defence in a Court of Law, the Statute against usury would be thereby eluded ; or at least, the guilty lender would be protected to the extent of his principal and legal interest, if the unfortunate borrower be forced into a Court of Equity to seek relief against the judgment.   Therefore the Courts of Law, acting on equitable principles, and under their general jurisdiction, will, upon motion, enter into the validity of a warrant of attorney and judgment ; vacate the warrant and set aside the judgment entered up thereon ; and this without the payment of the principal and legal interest of the money lent.   (See Edmonson v. Popkin, 1 Bos. & Pul. R. 270 ; Machin v. Delaval, Barnes' Notes, 52, 277 ;  Cook v. Jones, Cowp. R.

727; Roberts v. Goff, 4 Barn. & Ald. R. 92; and in New York, see Hewitt v. Fitch, 3 Johns. R. 250; Gilbert v. Eden, 2 Johns. Cas. 280.)

And so, in cases where a mortgage is taken to secure an usurious loan, with a power of sale annexed to it; or, as in the present case, a deed of assurance in trust to some third party, who is to sell the property to pay the usurious debt upon the requisition of the creditor; in either case, the creditor or lender can foreclose his mortgage, or enforce his security by an act *in pais*, without calling upon any Court to assist him, and the borrower is thereby precluded from making his legal defence. (See Parchman v. McKinney, 12 Sm. & Mar. R. 631; Marks v. Morris, 4 Hen. & Munf. R. 463; Scott v. Young, 4 Rand. R. 415; Martin v. Lindsay, 1 Leigh R. 499–513; Turpin v. Porall, 8 Leigh R. 93–100.)

It must be borne in mind that our Statute of Usury, unlike the British Statute of Anne, does not impose any penalty upon the lender, nor does it declare the contract void, but simply docks the interest, leaving the principal sum lent or forborne a valid debt. In these respects our Statute is precisely like the Mississippi Statute upon which the Court of Errors and Appeals passed in the adjudication of Parchman v. McKinney, before cited.

*H. N. & M. M. Potter*, for appellees. The question is, Can a party come into a Court of Equity and restrain the collection of a debt, when at the same time the plaintiff acknowledges a large portion of the claim to be due, and does not offer to pay the amount acknowledged to be due?

In the case of Novosielski v. Wakefield, 17 Ves. Jr. 417, which was a bill for redemption, the Lord Chancellor (Eldon) says, "The plaintiff in a bill for redemption proposes that his money is ready. He comes into Court, saying, here is the money, give me my estate."

The offering to allow the property to be sold at the end of

the suit to pay the amount acknowledged to be due, falls far short of doing what is just and equitable; and especially in a case like this where the plaintiff claims to be exempted from payment of interest, even should the cause continue in Court ten years; for, should the plaintiff succeed in her object, or what she claims, all interest would be forfeited on the debt up to the time of rendition of judgment in the cause.

"Whosoever seeks the aid of the equitable powers of the Court must do equity. A party asking the equitable aid of the Court to set up usury, must consent to do equity by offering to pay the money actually borrowed, with interest." (Beach v. Fulton Bank, 3 Wend. R. 586, 587; Farming v. Dunham, 5 Johns. Ch. Rep. 142; Fulton Bank v. Beach, 1 Paige, 429; Blydenbergh on Usury, 123–124; West v. Beanes, 4 Har. & Johns. 568; Lagoux v. Waute, 3 Id. 184; 2 Desau. 333; and see Taylor v. Smith, 2 Hawks, 465; Trumbos v. Blizzard et al. 6 Gill & Johns. 18; Couvers v. Myers, 7 Blackf. R. 337; Ferguson v. Sutphen, 3 Gilm. R. 547; Vilas v. Jones, 1 Comstock, 278; Post v. Bank of Utica, 7 Hill. 399.

WHEELER, J. There is no question of the rule of the Court of Chancery, that if the borrower seeks the aid of the Court to have a usurious security delivered up to be cancelled, or claims the enforcement of the Statute against usury, relief will only be decreed upon the terms of paying what is really due the defendant; and if the complainant do not make such offer by his bill, the defendant may demur. (1 Story's Eq. 301.) But I do not understand the rule to require that the plaintiff shall aver an actual tender, and bring the money into Court, as in case of a plea of tender. The precedents are not so, nor, as I conceive, was such the practice in the Court of Chancery. The complainant was required to offer to pay the money borrowed, with interest. The offer implied a readiness and willingness to pay; but not that the money was to be brought into Court, or tendered as a condition precedent to the granting

of relief. Such was not the doctrine or practice of the Court. It was laid down as a maxim, that the Court would attend to the claims of equal justice ; and would never interfere unless the plaintiff would consent to do what was right ; and accordingly the decree provided that he should have his relief upon the doing of that which equity required, in the manner and time which the Court thought fit to prescribe, and which were specified in the decree. But it was not made a condition precedent to the rendition of the decree. On the contrary, the terms on which relief was granted, were specified in the decree of the Court ; and the performance of the decree, was a condition precedent to obtaining the relief. Upon the offer of the complainant to do equity, the Court decreed what the Chancellor deemed to be equitable and right, attending to the claims of equal justice. The Court would not compel the complainant to accept of the terms imposed ; but it would refuse him relief, except upon compliance with the decree of the Court. Thus, in Bell v. Price, (1 Vem. 467) where a bill was filed praying relief against certain securities for goods sold at five for one the Court said, the plaintiff's security should be delivered up on payment of what was really and *bona fide* paid to him. So in Lawly v. Hooper (3 Atkyns, 287) the Chancellor decreed relief on certain terms specified in the decree ; and by the decree it was provided that, if the terms were refused, the bill should then be dismissed. So in Marks v. Morris, (4 Hen. & Munf. 466,) where the bill was filed, as in this case, to enjoin the execution of deeds of trust, given to secure the payment of a debt and usury, and for a discovery of the usury, the Chancellor decreed, that if the complainant should pay the principal sum due, on or before the first of October then next, the injunction should be made perpetual, and the deeds of trust and notes, given to secure the payment, should be delivered up to be cancelled, and the defendant be discharged of all other penalties imposed by the Act against usury ; but if such payment should not be made, then the injunction for so much of the prin-

cipal sum as had been ascertained to remain due, should stand dissolved as an act of this day, and the deeds remain as a security for the same.

It is needless to multiply references to show that it is the invariable practice of the Court of Chancery, to act upon the maxim before stated; of attending to the claims of equal justice; and, in so doing, to proceed to render its decree, prescribing the terms on which relief will be granted. Where the relief sought is the delivery up of a usurious security to be cancelled, or to prevent its execution or enforcement, the Court will decree the relief upon the terms of the complainant paying what is justly due. The only precedent condition which equity enjoins, is, that the borrower, in stating his case, shall make the offer to do equity, and relieve the lender from the penalty of the Act against usury; that is, the forfeiture of his entire debt, principal and interest. The payment of the money, or a tender of payment, is never made a condition precedent to the rendition of the decree.

In her original petition the plaintiff prayed that an account might be taken to ascertain what was really due, because, for causes which she assigns, she was ignorant of the amount of her indebtedness; she professed her readiness and willingness to pay whatever should be ascertained to be due. In this petition she does not expressly charge and complain that the reservation of interest was usurious; and her proffered readiness and willingness to pay what was due, was a sufficient offer to do equity. to entitle her to relief. But in her amended petition she charges that the reservation of interest was usurious, claims the benefit of the Statute, and to be relieved against the payment of any interest. This amended petition, therefore, limits the offer to pay to the principal sum due. If the demurrer, or exceptions to the petition, had taken the objection that the plaintiff did not offer to pay legal interest, it would have raised the question, which has been discussed with so much research and ability at the bar; that is, whether such offer

was necessary to entitle the plaintiff to any relief. But the exceptions did not take that objection. The objection taken was that the plaintiff "does not offer to do equity by paying or tendering the payment of what, by her own showing, she honestly owes." We have seen that this was not necessary. The offer to do equity does not consist in, or require the actual payment or tender of payment of what is admitted to be due. That is not a condition precedent to the decree of the Court granting relief. The Court, therefore, erred in sustaining the exceptions and dismissing the petition on the ground that the plaintiff had not paid, or tendered payment of the sum admitted to be 'due. And this might suffice for the present disposition of the case. But as its final decision on the merits will involve the question, whether it be necessary that she should offer to pay the principal and legal interest, and whether relief will only be granted upon that condition ; and as that question has been mainly and very fully discussed by counsel, it is deemed proper to dispose of it.

The English Statute against usury (12 Anne) made all usurious contracts void, and imposed heavy penalties on the usurer. The cases in which relief was sought in Chancery, it is said, were cases in which a remedy at law might be had, or in which a discovery was sought to sustain the defence at law, and hence that the Court was not "positively bound to interfere, but had a discretion on the subject ; and might prescribe the terms on which relief would be given. It was regarded as against conscience, that the borrower should pocket the money loaned, without being compelled to return what was really due. The Court, in the exercise of the discretion, which the Chancellor is said to have possessed in granting or withholding relief, determined that the party who resorts to a Court of Chancery to be relieved against a usurious contract, must pay the principal and legal interest ; that the excess above legal interest is the extent to which the Court would go in granting relief. (12 Sm. & Marsh. 637.) It is an acknowledged prin-

ciple, moreover, which was early admitted and has always been maintained in the Court of Chancery, that that Court has no jurisdiction to enforce penalties. And it was held that the offence, prohibited by the Statute of usury, was the taking of more than legal interest; but that to take legal interest was not against the policy of the law; that the forfeiture of the whole of the money lent, (and double the amount where the lender had received the usurious interest, recoverable by a common informer,) were penalties provided to enforce the policy of the law; that, consequently to declare the debt forfeited upon the application of the debtor, would be to enforce a penalty, which the Court of Chancery could not do. But, to relieve against the usurious excess, would be to promote the policy of the law, without enforcing a penalty; and was warranted by the general principles of equity, which relieves against unconscionable advantages taken of the necessitous circumstances of distressed persons. But to obtain the relief, it was necessary for the plaintiff expressly to waive the penalty of a forfeiture of the debt, (which was in his power, being the only person interested,) and to offer to pay the principal and legal interest.

It is also a principal as well of Courts of Chancery as Courts of Law, that no man shall be required, by his own answer, to criminate himself, or to answer to any matter, if it may subject him to a penalty. His answer to a bill charging usury, might subject him to the penalty of the loss of his whole debt, unless the penalty was waived; and therefore it must be waived by the plaintiff to entitle him to the defendant's answer. But the defendant might subject himself to a penalty which the plaintiff could not waive; for if he had received the usurious interest, he would be liable to a penalty recoverable by a common informer. In such case he could not be compelled to answer. But if the plaintiff waived the penalty which was in his power, and could prove the usury without a discovery from the defendant, upon an issue, he was entitled to

relief ; and it was measured by the same rule, the payment of the principal and legal interest ; and this, because the Court would, in no case, enforce a penalty. and because the party who had asked equity, was, as a condition of relief to him, to do equity. And for these reasons, arising mainly out of the peculiar constitution of the Court of Chancery in England, what at first had its foundation in the discretion of the Chancellor, has become the settled law of that Court. (4 Hen. & Munf. 464 ; 4 Rand. R. 418, 420.) But it has not been adopted invariably in this country. There is a provision of the Virginia Statute against usury, to the effect, that if, upon the answer of the defendant to a bill of discovery, it shall appear that more than lawful interest was reserved, the lender shall be obliged to accept the principal, without any interest. But the Court has adopted that as the measure of relief in all cases, whether the usurious agreement be made to appear by bill of discovery under the provision of the Statute, or be otherwise proved. So that the plaintiff is granted relief upon the payment of the principal, without any interest, in cases not within the provision of the Statute. The question has undergone much discussion, and has been productive of some difference of opinion in the Courts of that State ; and such is the result of the decisions. (Young v. Scott, 4 Rand. 415 ; Martin v. Lindsay, 1 Leigh, 548 ; Turpin v. Porall, 8 Id. 93. In the last Virginia case referred to by counsel for the appellant, (Turpin v. Porall,) Judge Brockenbrough stated the effect of the previous decision in Marks v. Morris, (2 Munf. 407,) which seems to be the leading case, to be, to place the debtor by deed of trust, nearly on a footing with a mortgagor or an obligor on a bond. " It was, (he said,) to prevent the first Section of the Statute (which demanded the penalty of forfeiture of both principal and interest,) from being eluded by the ingenuity of creditors, and the new invention of deeds which could execute themselves, and in some sort to place the debtor, by deed of trust, on an equality with obligors and mortgagors, that this

Court made the decision in Marks v. Morris; and see the opinion of the Chancellor in Marks v. Morris, in 4 Hen. & Munf. 463.)

The precise question before us arose and was decided by the High Court of Errors and Appeals of Mississippi in the case of Parchman v. McKinney, (12 Sm. & Marsh. 631,) upon a Statute which, like our own, only denounces the forfeiture of the interest upon an usurious agreement, and leaves the principal unaffected by it. There the debtor, as in this case, had executed deeds of trust to secure the payment of money due upon an usurious agreement, and the creditor being about. to force a sale under the deeds of trust, the debtor filed his bill to enjoin the sale, on the ground of usury, and the Court held that the rule of the Court of Chancery in England requiring the debtor to pay the principal and legal interest, did not apply to such a case; and that the plaintiff was entitled to relief upon payment of the principal alone, without any interest. Chief Justice Sharkey said, " From the peculiar char-" acter of a deed of trust, and the mode of proceeding to enforce " it, relief against it is a subject of original and primary chan-" cery jurisdiction ; and it is also exclusive, for a court of law " can not reach it. This party then is not to be treated as " though he had been negligent in making his defence in another " tribunal. He stands on the same ground that a defendant " does, who is making his defence at law, when sued on a usuri-" ous contract. He makes his ground of relief in the appropri-" ate tribunal, the only tribunal that can hear it, and at the first " opportunity. He is not, therefore, a proper object for such " terms as the Court in its discretion may think proper to im-" pose."

Nor do Courts of law in England impose such terms upon application to set aside a judgment entered upon a usurious agreement, under a warrant of attorney to confess judgment; but, proceeding upon equitable principles, they will inquire into the validity of the warrant of attorney and set aside the

judgment without imposing terms.   (1 Bos. & Pul. 270 ; 4 Barn. & Ald. 92 ; Cowp. 727.)

It thus appears that the rule in Chancery depends upon the peculiar Constitution of that Court.  And it rests upon reasons and principles which, if properly applicable to a case like the present, under our Statute, even in a Court of Chancery, manifestly have no application to our remedial system.   The Statute, in the first place, does not prescribe any penalties, except the loss of the interest, to which the party might have been entitled, but for his attempt to obtain more than the law allows him to contract for and recover.   But if the Statute did impose penalties, our Courts are Courts of Law as well as Equity ; and have the power which the Courts of Chancery in England and the several States have not, of decreeing forfeitures and penalties ; and there is therefore no occasion for the plaintiff to waive the penalty of the forfeiture of interest, and offer to pay it.

Again ; we have no bills of discovery in our practice ; and if the plaintiff should be under the necessity of making an appeal to the conscience of the lender, propounding interrogatories, to discover the usury, the answer of the defendant would subject him to no pains or penalties ; but only to a loss of the advantages he expected to derive from what the law deems an unconsciencious and oppressive bargain ; which it will not permit him to enforce. So that there is not the necessity, and there are none of the reasons arising from the constitution of our Courts, or the provisions of the Statute, which have operated to cause the Court of Chancery to impose terms, as a condition to giving relief.   Nor is there any such hardship upon the lender, in enforcing the provisions of the law, as that which appeals to the conscience of the Chancellor under the severe provisions of the English Statute.

The general rule is, that equity follows the law ; and when the question arises in a court of law, whether a Statute shall be enforced, according to its letter and spirit, it would seem

not to admit of doubt, or question, that the Court must enforce it, and can have no discretion to dispense with any of its provisions in one case more than in another. It cannot be denied that it is the duty of the Courts to carry out the legislative intention as expressed in their enactments, and to effectuate the object and policy of the law. And in our remedial system it can make no difference what attitude the parties occupy upon the record, whether as plaintiffs or defendants, as respects the power and duty of the Court to administer the relief to which they are legally entitled. There can be no reason why a party should avoid the consequences of his usurious bargain, merely because of the forms in which he had clothed it ; and because these enable him to occupy the attitude of a defendant instead of a plaintiff, upon the record. Nor can the plaintiff here be denied any right, which she would have if the form of the security had been such as to compel the defendant to come into Court to enforce it. Our law disregards forms, and looks only to matters of substance. It allows a defendant to reconvene and assume the attitude of a plaintiff, and to place the plaintiff in that of a defendant, and administers justice between the parties according to the law and right of the case, without stopping to inquire which of them it was that first asked the aid of the Court. When before the Court, it will adjudicate upon their rights, according to the law of the land ; and if it appears that one of them is seeking to enforce a usurious and void contract or deed, there is no principle upon which the Court can refuse to relieve against it. There would be just as much reason to deny the right to a defendant to plead that defence in order to prevent the recovery of usury in a judgment which may be enforced by execution, unless upon terms, as to deny the right to one who has given a security, which, as has been said, will execute itself, or which the parties may enforce without the aid of the Court, to ask the Court to prevent its execution or enforcement, unless upon such terms as the Court may impose. To admit the right in the one case

and deny it in the other would be to make the rights of parties depend on the form of the proceeding, instead of the rights of the parties; which would be subversive of the first principles of our remedial system.

It may be said that the lender ought not to be delayed in the recovery of what is justly his due, until the question of usury can be litigated. But the argument would apply equally to a case where he was plaintiff seeking the aid of the Court to enforce his contract. Yet that would not be deemed a sufficient reason to deny the defendant the right to set up the defence of usury. It would seem, however, that the Court should interpose by injunction no further than necessary to afford the relief sought ; and the correct practice would seem to be, to grant the injunction at first only for the interest, leaving the parties to the remedy they have provided for themselves as to the principal admitted to be due. This accords with the intimation of opinion of Judge Carr in Martin v. Linsay. (1 Leigh, 556.) If then the defendant admits the usury, there will be an end of the case. Otherwise, the Court can proceed to try that issue ; and the plaintiff, in the meantime, will not be delayed in the recovery of the principal.

We conclude that the plaintiff was not required to offer to pay the principal and legal interest ; if the contract was usurious she was entitled to be relieved from the payment of any interest ; and the offer to pay the principal was sufficient.

The judgment is reversed and the cause remanded.

Reversed and remanded.