# A. GOLDMAN, Adm'r of T. C. BORDEN, Dec'd, vs. L. & H. BLUM & HEIDENHEIMER BROS.

### SUPREME COURT, AUSTIN TERM, 1883.

*Promissory Note with Collateral Stipulations, &c.*—1. Though at common law, no suit could be maintained on a transfer to two persons of a part only of a note, with a reservation of the balance of the instrument to the original payee, yet in our courts, where the rules as to joinder of parties and causes of action are very liberal, and where there is no distinction observed in the assertion of rights between legal and equitable claims, and where the parties as in this case have a lien on a part of the note, and also seek in chancery the foreclosure of an express lien on certain real estate, by which the payment of the note is secure, it is held that the suit in its present form, can be maintained, under our former decisions.

2. Cases referred to in support of above: Stachely vs. Pierce, 28 Tex., 328; Moore vs. Minerva, 17 Tex., 20; Faulk vs. Faulk, 23 Tex., 653; Lanes vs. Squyres, 45 Tex., 383.

3. The death of the maker dispenses with the necessity of giving the notice required by the deed of trust before a foreclosure could be had in cases like the present.

4. The effect of the partial endorsement of the instrument in question, together with the other stipulations in the agreement on the back of the note, placed there at or before its execution, was to deprive the instrument of its negotiable character, notwithstanding the ordinary negotiable words appear on the face of it. In order to determine its character the whole instrument must be construed together as well the words on the back as on the face of it.

5. Authorities and cases on this point examined.

6. All the written instruments executed at or about the same time that the note and deed of trust in question were made, together with the rough notes and memoranda made at the time when the matter was still pending, are competent evidence to go to the jury for the purpose of arriving at and understanding the true intent and purpose with which the note in question was executed. Such evidence cannot be used to vary or contradict or alter the note, but may be used to show the intent of the parties in executing it.

7. The rule of evidence in Wells vs. Fairbanks, 5 Tex., 584, on this point cited and approved.

8. What was said and done by the parties while the business was being arranged, and the transaction was then depending, is admissible as part of the *res gestae*, and is calculated, in the absence of direct evidence, to shed light on the real character of the transaction.

ON RE-HEARING.

9. The cases of Lindsay vs. Price, 33 Tex., 282 and Frank vs. Kaigler, 36 Tex., 305, not overruled, and the difference between them and the present case noted.

10. Case of Knight vs. Holloman, 6 Tex., 162, considered in connection with the word "assign" as used in the 2nd section of the act of 25th of January 1840.

11. Authorities cited to the effect, that though an agreement may have the form of a promissory note, and have the conventional terms, that ordinarily invest such instruments with the character of negotiability, yet if such negotiable words are, limited or qualified by any contemporaneous stipulations in the body of the note or on its back, such conditions or limitations form a substantive part of the agreement and may, and often will, as in this case, destroy its negotiability.

12. The effect of such a disposition of the contents of the instrument under consideration, as was in this case provided for on its back and face, was to rob the instrument of its negotiability.

Appeal from Victoria County.—Tried in the District Court before the Hon. H. Clay Pleasants.

This suit was jointly brought by Leon & H. Blum and Heidenheimer & Bros. against A. Goldman, administrator of the estate of T. C. Borden, deceased, and Eva L. Borden, his widow, and John Owens, to recover against said estate, in favor of Leon & H. Blum, the sum of $4,000, with interest thereon from the twelfth day of March, 1877, and to recover in favor of Heidenheimer & Bros. the sum of $5,267.92, with interest thereon from the date aforesaid, and to foreclose a deed of trust executed by Borden and wife.

The basis of the suit was a promissory note for $15,000, executed by Borden to Owen, of date February 28th, 1877, secured by a deed of trust on lands and on property, executed on the date aforesaid.

Four thousand dollars of said note was assigned by Owens to Leon & H. Blum, and $5,267.92 thereof to Heidenheimer & Bros. on the 20th day of March, 1877.

The defendants, A. Goldman, administrator, and Eva L. Borden, demurred to plaintiffs' petition; and as a special ground of demurrer, alleged that the suit could not be maintained by the plaintiffs upon the partial assignments made to each of the plaintiff firms of the specified portions of the note sued on.

The demurrer further set up the misjoinder of parties plaintiff.

The demurrers were overruled and the cause was tried by a jury, and a judgment rendered in favor of the firms plaintiff for the sum by them severally claimed.

The note was as follows.—

" $15,000.

"VICTORIA, TEX. FEB. 28TH, A. D. 1877.

" Two years after date I promise to pay to John Owens, or order, the sum of Fifteen Thousand Dollars, with interest thereon at the rate of eight per cent. per annum from maturity until paid, value received.

" This note is due and payable in the City of Galveston, State of Texas, and is secured by deed of trust on lands and premises in Wharton County, State of Texas.

(Signed)        T. C. BORDEN."

On the back of the note was written as follows:—

" For value received, I hereby transfer to Leon & H. Blum the amount of Four Thousand Dollars of the within note and the security therefor; and for value received, I hereby transfer to Heidenheimer & Bros. the amount of Fifty-two hundred and Sixty-seven dollars and ninety-two cents of the within note and the security therefor, with interest on each amount from March 12th, 1879; and for value received, I hereby guarantee and insure the prompt payment of the within note at its maturity, and waive suit, protest and notice on each of the respective amounts referred to above.

JOHN OWENS.

GALVESTON, TEX., MARCH 12TH, 1877.

There was proof that about the date of this note, that Borden, Owens, and one Shelton, entered into articles of partnership.

The above note was dated February 28th, 1877. The transfer on the back is of date 12th March, 1877. The articles of partnership between Owens, Borden and Shelton, above alluded to, were dated 12th March, 1877. The deed of trust was acknowledged in Victoria by Borden and wife, on the 8th of March, 1877, and was recorded in Wharton County, 17th of March, 1877. S. Blum, of the firm of Leon & H. Blum, was the trustee named in the deed, and had been agreed upon as trustee before the note or deed of trust was signed. At the same time, 12th March, 1877, Owens executed his notes to L. & H. Blum and Heidenheimer Bros. for the debts he previously owed them.

There was also offered in evidence letters and memoranda, made about the date of the transactions by the parties to them. These

bore the date of about the 14th of February, 1877.  T. C. Borden died before the maturity of the note.

There was evidence introduced to show. that notwithstanding the apparent difference in dates, that the note, the deed of trust to secure the note, the articles of partnership between Owens, Borden and Shelton, the memorandum and correspondence and Owens' notes to appellees, were all parts of one transaction, the action in reference to which extended from about the 12th of February, 1877, or a little before that date, down to the 12th and possibly the 17th of March, 1877, and that in fact up to the 12th of March, 1877, that Borden's note remained under the control and in the possession of either of Borden himself, or of his agent, Owens, as also were up to that date Owens' own notes to the appellees.

In the articles of partnership it was especially agreed that Borden's note and deed of trust above set forth were not to be used by Owens except as collateral security for the payment of such advances as might be made in the future by Galveston merchants to the firm of Owens, Borden & Shelton, and any other disposition of it was expressly forbidden.

The evidence of Shelton was to the effect, that though Owens was then in fact insolvent, that both he (Shelton) and Owens concealed his financial condition from Borden and did not inform him of the existence of the debts, for the securing of which, Owens, in fact, assigned the note in question, contrary to his written agreement with Borden.

The evidence does not show that either L. & H. Blum, or Heidenheimer Bros. knew that Borden had forbid Owens to transfer the note except for future advances.

It appears, however, that they knew that Owens, Borden and Shelton had formed a partnership.  The court excluded the articles of partnership so far as they related to L. & H. Blum and Heidenheimer Bros., but admitted them so far as Owens was concerned.

The court excluded the letters, memoranda, calculations, &c., &c., marked Exhibits "A," "B," and "C," that were offered in evidence as part of the *res gestae*.

There was a verdict and judgment for L. & H. Blum and Heidenheimer Bros.

*Lackey, Stayton & Kleberg* for Appellant.
*A. B. Peticolas*, also for Appellant.
*Glass & Callender*, and *Scott & Levi*, for Appellees.

Opinion by West, J.

The court, we believe, on the whole ruled correctly in holding that under the averments in the pleadings the appellees could jointly sue for the recovery of the amount due to them, and for the foreclosure of the lien on the real estate described in the petition.

At common law such a transfer of a part only of the note to two distinct persons, and a reservation of the balance of the instrument to the original payee could not be recognized, and no action at law could be maintained on such a title by any of the parties to it.

Hawkins vs. Cardy, 1 Ld. Raymond, 360.

Heilbut vs. Nevil, 4 L. R. C. P. at 358.

Conover vs. Earl, 26 Iowa, 169.

Groves vs. Ruby, 24 Inda., 418.

Chalmers Dig. of the Law of Bills, Notes and Checks, Art. 115, and cases there cited.

Field vs. The Mayor of N. Y., 2d Selden, 179.

Hughes vs. Keddell, 2 Bay, 324.

Miller vs. Bledsoe, 1 Scam., 530.

Wait's Actions and Defences, Vol. 1, 574.

With us there is, however, no distinction between legal and equitable rights as to the manner of their assertion, and under the operation of the very liberal rules, as to the joinder of parties plaintiffs, and of causes of action heretofore laid down by the court, the ruling of the district court on this point can be sustained, as justified by the previous practice of the court.

Stachely vs. Pierce, 28 Tex. 328.

Moore vs. Minerva, 17 Tex. 20.

Faulk vs. Faulk, 23 Tex., 653.

Lane vs. Squyres, 45 Tex. 383.

The action of the court, under all the facts of the case, in holding that on account of the death of the maker, and for other reasons, the plaintiffs were not required to give the six months' notice as to fore-

closure, required by the deed of trust before bringing suit, was correct.

Let us now consider the nature and character of this partial transfer by Owens to the appellees of the instrument in question. What effect did it have upon the character of the instrument? Did it take away its negotiable qualities? The record discloses the fact that though the note and the deed of trust to secure it have a different date from that of the partial transfer from Owens to appellee, yet as a matter of fact they are of the same date, or at least constitute one transaction.

The record shows that the execution of the note, the agreement on the back of it, the deed of trust, and the articles of partnership between Borden, Owens and Shelton, and the execution of his notes by by Owens to appellees, were all in fact contemporaneous. They are in law but one transaction, and all relate in part to the same matter, and must be considered as executed practically at the same time.

The partial transfer by Owens on the back of the note had the effect of making it (or a part of it) collateral security for his own notes of that date, which notes were given for an antecedent indebtedness of his to the appellees.

He, at the same time, became a guarantor for the prompt payment of the entire amount of the note, and also in the same instrument waived protest and notice.

The instrument on its face, gave notice that it was secured by a deed of trust on land, in which deed it was provided that the land should not be sold even after the maturity of the note without six months notice of the intention to foreclose, being given to the maker. The character of notice was also carefully provided for.

This partial transfer was prepared and written on the back of the note by the appellees either before or at the time of its execution. The evidence leads to the conclusion that it was under their direction written on the note before the signature of the maker, and it may have been, and likely was, signed by Owens, before Borden himself signed the instrument. Be that as it may, before its final delivery it was all arranged and understood between Borden, Owens, and the appellees; what the body of the instrument should contain, and what should be written on the reverse side of it, over the signature of Owens; and one of the appellees was in advance

agreed upon, as trustee before the note and deed of trust were signed.

There was an averment in the pleadings of appellees, that Owens owned no part of the instrument after his transfer of it to the appellees. But the evidence failed to sustain the allegation. The correspondence between appellees, and Owens and Borden shows the fact, that Owens still owned it, or held at least the legal title to it.

The effect of this partial transfer was to split the title of the note into three separate and unequal parts. Two parts of it belonged separately to the appellees, the unpaid balance belonged to Owens. All this plainly appears from the contemporaneous stipulation of the parties on the face, and the reverse of the note in question.

The title to the note was thus in the three, and Owens, according to the testimony of one at least of the appellees, and no doubt in accordance with the agreement and understanding of all of them, was to surrender the possession of the note and leave it in the hands of the appellees, they holding in addition to their own interest, his interest also, as collateral security for the payment of his antecedent indebtedness to them, still unpaid, and represented by his own promissory notes of equal date.

The result of this arrangement, all agreed upon and understood by the parties, before the execution and delivery of the note, and evidenced by it, was, in our opinion, under the facts of the case as disclosed by the note and the collateral agreement of the parties, on the back of the note, taken both together, to effectually strip the instrument of its negotiable characteristics. The relation too in which the parties then stood to each other, the unusual provision of the deed of trust, which was a part of the same transaction, and drawn under the direction of appellees, that no foreclosure should be had without six months notice to the maker, given in a particular way, and necessary even after the maturity of the paper, the fact that the note was delivered by Owens, to be used and held as collateral security for his antecedent debts; the fact that the property in it was before its execution parcelled out between Owens and the two firms, who were his creditors; that the remaining balance Owens was also to allow them to hold as additional collateral security for his debt, due to them, and that he was to waive protest and notice and guarantee the entire note, would strongly indicate that it

was not transferred in the due course of trade, and was in fact out of the usual and ordinary course of business of parties dealing with commercial paper even if that fact did not appear as it does from the face and back of the instrument. The reason of this is well stated by Mr. Edwards in the 3rd and last edition of his valuable work on Bills and Notes, Vol. 1., section 396, marg. p. 279. After stating that the right of property in a note (*e. g.* Owens' right of property in the note of Borden), necessarily implies the right to sell it, or make such other disposition of it, as the owner and holder may see fit, he goes on in the same connection to observe : "But the payee or indorser of a note cannot assign or transfer a part of the sum due thereon, so as to enable his indorser to maintain an action on the note against the maker."

"The reason is," says Mr. Edwards, "that no one can recover on a note unless he shows a title to the instrument and he cannot deduce his title through an endorsement, which is not made in compliance with the established custom of merchants, and this custom of merchants does not allow the contract to be apportioned so as to subject the parties liable thereon to separate and distinct actions." "That custom directs that the indorsement should be made in writing on the note or bill appointing the contents to be paid to some third person, but does not recognize a partial endorsement. The language of the books is that an endorsement transfers the property of the note or bill to the indorsee. What does less than that is not strictly an endorsement, and hence says Mr. Justice Bayley, an indorsement cannot be made for the transfer of less than the full sum that appears to be due upon the bill or note."

Story on Prom. Notes, Sec. 23–24.

Roberts vs. Hall, 7 Conn., 212.

Waits Actions & Defences, 1 Vol., p. 612 & 613, also p. 590 & 591, also p. 585–586.

Parsons on Notes and Bills, 2 Vol., Ch. 6, Sec. 3, p. 146–149.

In Douglas vs. Wilkeson, 6 Wend., 640, Chief Justice Savage, Judge Marcy and others composing the court, a similar question was presented. In that case the note was for $2500, and the holder (the payee) endorsed the same to the plaintiffs for $750, a part only of the contents of the note. The question was whether that was a transfer in the due and ordinary course of business. After discussing the question fully and ably, the court speaking with reference to the

contract created by this character of partial endorsement, say :—
" When, therefore, the contract between the payee of a negotiable
note and a third person is of such a character as to give the latter no
rights, as against the maker, that contract is not an indorsement of
the note *within the custom of merchants.*"

Chancellor Kent, 3 Com., p. 59, says :—" The bill cannot be en-
dorsed for a part only of its contents, unless the residue has been
extinguished." In this case we have seen the appellees refuse to
credit the balance as paid. The law then applicable to non-negoti-
able instruments furnishes the rule for determining the respective
rights of the parties in this transaction.

If the appellees knew, or by the use of ordinary diligence and in-
quiry of the proper sources from which it was reasonably certain or
probable that all necessary information could be obtained, they could
have ascertained the facts as to the true relation in which Owens
stood to the note, then they are charged with such knowledge.

Bacon vs. O'Connor, 25 Tex. 213.

Wethered vs. Boon, 17 Tex. 143.

This subject of notice was entirely a matter of fact to be ascertain-
ed from the evidence. The whole question on this subject was one
for the jury to pass upon, after considering all the facts and circum-
stances surrounding the transaction.

The charge of the learned judge, who tried the case, was not en-
tirely and in every respect satisfactory on this subject, and did not
fully submit all these matters to the jury with a sufficient explana-
tion of the law governing the case. It, however, in most respects,
was not objectionable. (1 vol. Addison on Con., pp. 448–450. The
articles of partnership between Owens, Borden, and Shelton, bearing
the same date in fact as the other papers, should have been allowed
to go the jury, not only in relation to the appellants' claim against
Owens, but also as throwing light on the issues raised by the plead-
ings between appellant and appellees.

It was calculated to show how, and under what conditions, and
for what consideration, Borden had executed the instrument in ques-
tion.

Taking in connection, with the fact that the appellees knew that
Borden was to be a partner of Owens in his mercantile relations, and
if they had commercial dealings with him in the future, they would
deal with him in all likelihood in that capacity, these articles might

to some extent at least assist the jury in arriving at the real truth of the matter.

For the same reason we are of the opinion that the court erred in excluding from the consideration of the jury the papers mentioned in the appellants' bills of exception as exhibits "A," "B" and "C."

They were calculated to some extent at least to explain the circumstances surrounding all the parties when the note in question was made, and might be useful in enabling the jury to determine whether the appellees did not understand, or could not have learned that the note in question was intended as a basis for future credit, and not to pay the old debts of Owens to appellees, long past due, and in which Borden had no interest, and in reference to which he was under no obligation, moral or legal, and of the existence of which, as may be inferred from Shelton's evidence, he was kept in ignorance.

In cases of this character, where the maker of the note is dead, and his widow and administrator are ignorant of the true history of the transaction, resort must be had to the best legal testimony that the nature of the case will admit of, in the absence of positive proof. If direct and positive evidence cannot be obtained, circumstantial evidence, if it exist and is lawful testimony, can be resorted to.

In Wells vs. Fairbanks, 5 Tex. 584, judge Wheeler observes :—"Great latitude is justly allowed by the law to the reception of indirect and circumstantial evidence, the aid of which is constantly required to remedy the want of direct evidence. In the absence of direct evidence, that which conduces in any degree to establish a material fact alleged, is in general admissible."

Any fact may be submitted to a jury, provided it can be established by competent means, which affords any fair presumption or inference as to the question in dispute. 1 Starkie Ev. 57, 58." See also Chandler vs. Meckling, 22 Tex. 36; Cooper vs. the State, 19 Tex., 458, 457.

What was said and done by the parties while the business was being arranged, and while the transaction was then depending, *et dum fervet opus*, is admissible in evidence as part of the *res gestae*, and is considered as well calculated, in the absence of direct evidence, to shed light on the real character of the transaction.

· 1 Green Ev. 113.

The judgment is reversed and the cause remanded.

There was a motion for re-hearing filed. In disposing of it the court delivered the following opinion:—

## ON RE-HEARING.

West, J.

There is only one ground taken in the motion for re-hearing that will require any notice. To that, attention will be very briefly called.

Before doing so, however, we will take advantage of this occasion to make an observation or two having no reference to the present motion, in addition to what has been said in the original opinion in relation to some points that are there considered.

Lest it might be supposed that the cases of Lindsay vs. Price, 33 Texas, 282, and Frank vs. Kaigler, 36 Texas, 305, are overruled by this case, it is proper to add something to what was before stated as to the right of appellees to bring this suit.

In the brief of appellants, our attention was more than once called to these two cases, and it was urged that as the transfer of the instrument was in this case clearly partial and out of the usual course of business, and contrary to mercantile usage, that the appellees failed to show such title as would be sufficient for them to maintain their action upon the instrument in question.

We arrived at the conclusion, however, that there was a marked difference between the case at bar and the two cases above referred to, and without intending to overrule these cases, held that the appellees could under the facts of this case undoubtedly maintain this suit in the form and manner in which it was brought. In arriving at this result, though the subject was considered, we did not attach any great importance to the use of the word "assign" in the second section of the act of 25th January, 1840, (Hart. Digest, Art. 2521) for the reason that in Knight vs. Holliman, 6 Texas, 162, this Court had decided, after a full and able argument, in a carefully prepared opinion delivered by Justice Wheeler, that this word, as there used, was simply employed to denote the transfer of negotiable paper. No further scope or significance was given to it.

As our courts, however, constantly exercise in the same cause both legal and equitable powers, we held that this suit could be maintained, inasmuch as it had been held by high authority that such a qualified and partial transfer as the one in question, even of paper

clearly negotiable, was not absolutely void, but gave the transferee a claim upon the note or bill in the nature of a lien. (Byles on Bills, sixth edition, top page 233, marg. page 171–172.) This too, was really a suit to establish a rejected claim against the estate of a deceased person, and was also in effect a bill in equity, for the foreclosure of a lien on real estate secured by a deed of trust, which deed, by reason of the death of the maker, and the refusal of the administrator to act, could only be enforced through the instrumentality of the District court; for all these reasons, as well as many others that could be given, we held that under the facts of this case the appellees had the right to maintain the suit.

Smith vs. Clopton, 4 Tex., 113.

Ogden vs. Slade, 1 Tex., 13.

Spann vs. Sterns, 18 Tex., 556.

Payne vs. Benham, 16 Tex., 314.

Gibson vs. Moore, 22 Tex., 611.

The authorities are full and satisfactory to the effect, that though the agreement or written instrument may have to some extent the form of a promissory note, and may use in its body the conventional terms that ordinarily invest such instruments with the character of negotiability; yet, if by a stipulation in the body of the instrument, these elements which give it negotiability are limited and qualified, the negotiability of the instrument is destroyed.

Woods vs. North, 84 Penn. State, 407, S. C. 24, Am. Rep. 201.

Farquer vs. Fidelity Ins. Co., 18 Albany Law Journal, 330.

1 Parsons on Notes and Bills, 37, 38.

2 Parsons on Notes and Bills, 534, *et seq*.

It is also well settled that any memorandum or agreement of the parties, written across the face or on the back of the instrument contemporaneously with its execution, and intended and understood by them to constitute a part of the contract, is a substantive part of such note and limits and qualifies it in the same manner as if inserted in the body of the instrument itself, and, with it, constitutes a single contract.

1 Daniel Neg. Inst., 59, 60–79–149.

Carlin vs. Knealey, 12 M. and W. 139.

Warrington vs. Early, 2 Ellis and Bl. 763.

Hartley vs. Wilkinson, 4 M. and S. 25.

Benedict vs. Cowden, 49 N. Y. 402.

Leeds vs. Lancashire, 2 Camp. 205.

Springfield Bank vs. Merrick, 14 Mass. 322.

Barnard vs. Cushing, 4 Met. 230.

Shaw vs. Meth. Epis. Society, 8 Met. 223.

Fletcher vs. Blodgett, 16 Vt. 26.

Jones vs. Fales, 4 Mass. 245.

Johnson vs. Heagan, 23 Me. 329.

Briggs vs. Lapham, 12 Met. 475.

Smith vs. Nightengale, 2 Stark, 375.

Leading Cases on Bills and Notes, (Redfield & Bigelow) p. 8, 9, 194 *et seq.*

2 Parson's Notes and Bills, 539.

The effect of such a disposition of the contents of the notes under consideration, as was provided for by the stipulations on its face and on its back, all made at the same time and constituting one transaction, was to rob it of it of the character of negotiability. Its contents were from the first apportioned and set apart by the maker and payee and transferees. It was divided into three distinct and unequal parts among three different owners. If this act did not destroy the commercial qualities of the instrument, might not the three owners of it again split it and parcel it out still further, and subdivide it into still smaller parts ?

Such an instrument, to borrow the forcible language of Lord Denman, "carries its death-wound apparent on it." (Goodman vs. Harvey, 4 Adol. & Ellis, 870.)

The only ground of the present motion to which it has been necessary to give attention, is that in which it is contended that the court was in error as to the facts contained in the transcript. The record has been again examined, and the opinion is found to state the facts in accordance with the record.

Beyond this matter of a supposed mistake, or a misapprehension by the court of the facts, there is nothing in the motion that merits special attention.

No new authorities have been called to our notice, and we find nothing in it except the statement as to the supposed mistakes of the court as to the matters of fact that require consideration.

The motion is refused.

Judge Stayton not sitting.